NORBECK & NICHOLSON COMPANY, Plaintiff, v. STATE OF SOUTH DAKOTA, Defendant.

(142 N. W. 847.)

1.  **State—Claim Against State—Validity of Contract—Interest of Officer—Constitutional Law.**

    Under Const., Art. 3, Sec. 12, prohibiting any legislative member having any interest in a contract with the state authorized by law passed during the term for which he was elected, and Art. 12, Sec. 3, prohibiting legislative authorization of payment of any claim against the state under contracts made without express authority, and making void unauthorized contracts, such a contract is absolutely void, and against public policy, and cannot be enforced, either as upon contract, express or implied, or on quantum meruit.

    Whiting, P. J., dissenting.

2.  **Legislature—Trust Relation of Members to State—Interest in Contract—Constitutional Law.**

    A member of the legislature stands, by virtue of his office, in a fiduciary relation toward the state, and is its confidential agent for appropriating the state's money for payment of its lawful contractual obligations, and it is contrary to public policy to permit him to be interested, directly or indirectly, in any contract with the state during the existence of such relation.

3.  **Contracts—Express Prohibition of Contract—Effect of—Constitutional Law.**

    A contract that is illegal because expressly prohibited by law, is unenforceable as a general rule, and where one party thereto has performed in whole or in part he cannot avoid the contract and recover a reasonable compensation for performance.

4.  **Contracts—Illegality—Contracts Prohibited by Law—Exceptions to Rule.**

    The rule that an expressly prohibited contract is unenforceable, and that no recovery, either on contract or on quantum meruit, can be had thereunder, does not apply where the law provides for recovery on performance, or where parties are not in pari delicto, in which latter case the party not participating in the wrong may recover, but not the other party, or where the contract is not declared void by law, or does not

relate to a penal matter, and does not involve moral turpitude, but is prohibited only, and the parties are in pari delicto, in which case one party who has received value from the other in execution of the contract is liable therefor. **Held,** further, that plaintiff, a stockholder in which corporation was a member of the legislature when an appropriation bill involved in the contract in controversy was passed, is not within the exception last above noted, as being a party to a contract voidable only, as distinguished from void, that such exception is available only in favor of private individuals on ground of estoppel.

5.   **Illegality—Waiver—Estoppel—Recovery on, When.**

One for whose benefit a contract is prohibited may waive the prohibition, or by acts be estopped from asserting its invalidity, in which case recovery on quantum meruit, or quantum valebat, may be had; but this rule is not available when contrary to public policy.

6.   **Illegality—Waiver by Officer or Legislature—Constitutional Law.**

A public official, or the legislature, may not waive illegality of a contract with the state, where prohibited by the constitution, Art. 12, Sec. 3, declaring illegal contracts to be void, and that no payment shall be made on account thereof.

7.   **State—Contracts With—Validity—Interest of Corporate Stockholder, Also Legislative Member.**

A contract between state board of regents of education and a corporation, of which a member of the legislature authorizing the contract is a member, is within Const., Art. 3, Sec. 12, prohibiting an interest of a legislative member in such a contract; since the interest of such stockholder is within the prohibition.

8.   **State—Illegal Contract With—Validity—Moral Turpitude—State's Advantage Under Contract.**

That there was no personal moral turpitude or dishonesty involved in a contract prohibited and declared void by the constitution, and that the state may have made an advantageous contract and has suffered no loss by reason thereof, is immaterial, in determining the rights of the parties thereto.

9.   **Contract With State—Validity—Constitutional Provisions.**

A contract between the state board of regents of education and a corporation, of which a member of the legislature authorizing the contract is a stockholder, for sinking and equipping an artesian well on state university grounds, as authorized by a legislative appropriation, is within Const., Art. 12, Sec. 3, prohibiting legislature from paying claims against the state under contracts made without express authority of law, and declaring such contracts void, since the contract is expressly prohibited by Const., Art. 3, Sec. 12, and any contract expressly prohibited by constitution or laws of the

state is within the class of contracts described as contracts
made without express authority of law, and hence void.   Whiting, P. J., dissenting.

Whiting, P. J., concurring specially in the result.

(Opinion filed July 11, 1913.)

Original action by the Norbeck & Nicholson Company against
the State of South Dakota, to recover upon a contract for sinking
and furnishing equipments for an artesian well by plaintiff.   Demurrer to complaint, as not stating facts constituting a cause of
action, sustained.

*Sterling & Clark,* for Plaintiff.

Section 12, Art. 3, of the Constitution is directory, and no
penalties either civil or criminal are connected therewith.

This is an action on quantum meruit, the plaintiff seeking to
recover the reasonable value only of services performed and material furnished.   The contract is not relied upon.

It will be necessary to bear in mind certain provisions of statutory construction.   Among the most important of these considerations is the evil that was aimed at by the framers of the
Constitution.   It is apparent that a legal contract might be made
to pay more than the reasonable value of services rendered or
materials furnished. The state would have no redress against
such unconscionable contract unless there was such a provision
as is contained in this section of the Constitution.   But there
would never be any injustice nor danger of any wrong in permitting a state to pay the reasonable value for services rendered for
it, or for materials furnished it.   The intent of the framers of
the Constitution could not have been that no member of the Legislature could receive reasonable value for services or materials
furnished in good faith to the state.   Therefore there would have
been no reason for the Legislature to provide an inhibition against
the payment of reasonable value.   The framers of the Constitution
did not so provide, and the court will not read into the Constitution
anything that does not by fair implication belong there.

It appeared that the bid of Norbeck & Nicholson Co. was the
lowest and best that could be obtained.   Thereupon the Board
of Regents contracted with Norbeck & Nicholson Co. for the
well.   But the case is so far removed in principle from cases that
the framers of the Constitution undoubtedly had in mind, that

it would seem to involve a strained construction of the constitutional provision to hold the contract itself involved. But, admitting for the sake of argument that the contract is technically prohibited, the court must go farther and extend the constitutional provision much farther than its plain terms impart, in order to hold that there can be no recovery under the circumstances, on the claim for a reasonable value.

As to the construction of constitutions, they must be construed according to reason and good judgment. "8 Cyc. 31."

Is this constitutional provision self executing? If so, will the court go farther than to hold that the contract itself may be voidable?

In Burk v. Woodward, (Cal.) 45 L. R. A. 421, the court recognizes the general rule that recovery may be had on quantum meruit.

Where the subject matter of the contract is merely malum prohibitum, the courts will allow a recovery upon quantum meruit. Livingston v. School District, 11 S. D. 150; Macon v. Huff, 60 Ga. 226-230; Ardentis v. City of San. Fran., 16 Cal. 273; Pickett v. School District, 25 Wis. 551; Currie v. School District, (Minn.) 27 N. W. 923; Hall Pub. Co. vs. Lincoln, (Neb.) 45 N. W. 245; Grand Island Gas Co. v. West, (Neb.) 45 N. W. 242.

The subject matter of this contract was a proper subject for a contract. It was made on the part of the state by the proper board. The regents of education had power to make contracts by statute passed long before the 1911 session of the Legislature. (Sec. 205 Pol. Code.)

The Legislature of 1911 simply appropriated the money to be used for the contract. The state had the benefit of the judgment and discretion of every member of the board of regents. It is not similar to the case where a person contracts with a corporation of which he is a member of the governing board. Nothing has happened to prevent the state from getting a fair contract, which was all it could expect.

No rule of public policy requires the court to refuse to allow the plaintiff to recover the reasonable value of such services.

Public policy demands fair dealing and that the state, as well as individuals, pay a reasonable value for what it receives. Public policy would be fully subserved if contracts of this kind be dis-

regarded, but recovery allowed on quantum meruits.  Public policy will not be subserved if the contract is set aside, and the state is allowed to retain the fruits of plaintiff's labor and services without any compensation whatever.

*Royal C. Johnson,* Attorney General, for the State.

The interest of Mr. Norbeck as a stockholder in the plaintiff corporation brings this contract within section 12, article 3, Constitution.  Northport v. N. T. Co., 27 Wash. 543, 68 Pac. 204; City of San Diego v. Co., 44 Cal. 106; 1 Greenl. Ev. (14th ed.) Sec. 333; Mechem Pub. Off., 839; 1 Dillon Mun. Corp., Sec. 444; Michond v. Girod, 4 How. 503, 11 L. Ed. 1076.

The express contract is unlawful.  Section 1271, Civil Code.

This contract is prohibited by express law, to-wit, section 12, Art. 8, Constitution, and is unlawful under the above quoted ·section, and cannot be enforced.  9 Cyc. 475; 15 Am. & Eng. Ency. of Law, 937; Palmer v. State, 11 S. D. 78; 8 Cyc. 729; Pev v. Albertson, 55 N. Y. 50, 55.

There can be no implied contract.

Nor can the party performing, on his part, the provisions of an illegal contract, recover on the ground of an implied promise on the part of the party receiving the benefits therefrom to pay therefor, as the law will imply no promise to pay for benefits received under an illegal contract by reason of the performance thereof by the other party.  15 Am. & Eng. Ency. of Law, 999; Berke v. Woodward, 125 Cal. 119, 45 L. R. A. 420, 73 L. A. R. 31, 57 Pac. 777; Bay v. Davidson et al., (Ia.) 111 N. W. 25, 9 L. R. A. (N. S.) 1014; Northport v. N. T. Co., 27 Wash. 543, 68 Pac. 204; Re Plattsburg, 27 App. Div. 353, 50 N. Y. Supp. 356; Macy v. City of Duluth, 68 Minn. 452, 71 N. W. 687; American S. Co. v. Co. 65 Ill. App. 205; Bowman v. Phillips, 41 Kan. 364, 13 A. S. R. 292; Zottman v. San Francisco, 20 Cal. 96, 81 A. D. 96; Fort Wayne v. Rosenthal, 75 Ind. 156, 39 A. R. 127; Land Co. v. McIntyre, 100 Wis. 245, 699 A. S. R., 915; Detroit v. Mich. Co., 36 Mich. 335; Bank of United States v. Owens, 2 Peters, 527, 7 L. Ed. 508.

The theory that the state, having received the benefit of the contract, is estopped to defend against it on the ground that the contract is illegal and void, cannot be asserted in this case.  That

13—Vol. 32, S. D.

theory applies to cases where private rights alone are concerned, while in contracts such as the one in question, void as against public policy, the public is interested. The interest of the public cannot be made a matter of private bargain. A number of maxims apply to interdict the enforcement of such a contract; and the receipt of benefits and retention of property under such a contract gives no right of recovery. If the contract has not been executed it will not be enforced; if it has been executed, the law will not extend relief. 9 Cyc. 550; Robinson v. Patterson, 71 Mich. 141, 39 N. W. 21; Solomons v. Chelsea, 38 N. H. 238; Brown v. Bank, 137 Ind. 655, 24 L. R. A. 211, 37 N. E. 158; Gleason v. Ry. Co., (Ia.) 43 N. W. 517; Wheeler v. Wheeler, 5 Lans. 355; Snyder v. Willey, 43 Mich. 483; Greenhood Pub. Pol., 2 3, 6, Note 3; Broom Legal Maxims, Sec. 730; Cincinnati v. Cameron, 33 Ohio St. 336; Zottman v. City of San Francisco, 20 Cal. 97; Ellis v. Hamden, 3 Taunt. 52.

Where, by statute, the power of a municipality or other public corporation to make a contract is limited to a certain manner and under certain circumstances, and any other manner of entering into a contract, agreement or obligation is expressly or impliedly forbidden, no implied liability can arise against the municipality for funds received under a contract within the scope of such statute, and violative thereof. McCormick v. Niles, 27 L. R. A. (N. S.), note on page 1120; Harris v. State, 9 S. D. 453; Doyle v. Rector, etc., 133 N. Y. 372, 31 N. E. 221.

The courts have always shown themselves very solicitous of the proper administration of the public service, and have not hesitated to hold illegal as against public policy contracts which they have considered detrimental thereto. 15 Am. & Eng. Ency. of Law, 963.

Among such contracts are those of public officers or employees and other persons occupying a fiduciary or confidential position, and these contracts are void as against public policy. 9 Cyc. 470-4; 8 Cyc. 729; Peo. vs. Albertson, 55 N. Y. 50, 55; Bellaire v. Findley, 5 Ohio C. C. 118; Brooks v. Cooper, 50 N. J. E. 761, 35 A. S. R. 793; People v. Twp., 11 Mich. 222; McGregor v. City, 79 Ind. 166; Wardell v. Ry. Co. 103 U. S. 658; Dwight v. Palmer, 74 Ill. 295; Mechem Pub. Off. 839; Dillon Mun. Corp. 444.

McCOY, J.   This is an original action commenced by Norbeck & Nicholson Company, plaintiff, against the state of South Dakota, under the provision of the Code of Civil Procedure, providing that when the State Auditor shall refuse to allow any just claim against the state, that any person deeming himself aggrieved thereby may maintain an action in the Supreme Court against the state to determine the legality or justness of such claim.   From plaintiff's complaint it appears that one Peter Norbeck, during the year 1911, was president of the plaintiff corporation, and was also, during 1911, state senator for Spink county, state of South Dakota; that during the legislative session of 1911 (Laws 1911, c. 38), an act was passed and became a law, appropriating $5,000 to sink and equip an artesian well and provide necessary water mains in connection therewith upon the State University grounds at Vermillion; that after the passage of said law, and about the 15th of March, 1911, the said Peter Norbeck, acting as president of plaintiff corporation, entered into a contract with the state board of regents of education to construct, sink, and equip said artesian well mentioned and provided for in said legislative act; that in and by the terms of said contract plaintiff was to furnish all labor and materials for the sinking and construction of said well, and was to receive as compensation therefor a certain sum per foot depth; that under and by virtue and in pursuance of said contract plaintiff did sink and construct said well to the dept of 442 feet and furnished the materials therefor, between the 20th day of March and the 8th day of April, 1911, upon the State University grounds, and that the state ever since has been, and now is, enjoying the full and exclusive use and benefit of said well, and of plaintiff's labor and materials furnished in the construction thereof; that thereafter, on about the 1st day of May, 1911, and in due form of law, the plaintiff presented its claim in the sum of $2,-602.89 to the State Auditor for allowance and issuance of a warrant upon the State Treasurer therefor, and that the State Auditor refused to allow such claim on the ground that the same was in conflict with section 12, article 3, of the state Constitution; that the reasonable value of the work and materials furnished by plaintiff in the construction and sinking of said well is the sum of $2,602.89, for which amount plaintiff demands judgment against the defendant, state of South Dakota.   To which complaint de-

fendants interposed a demurrer on the ground that such complaint fails to state facts sufficient to constitute a cause of action against defendant.

[1] It is the contention of the defendant state that this contract entered into by Norbeck & Nicholson Company to sink and equip said well is an illegal contract by reason of its being prohibited by section 12, article 3, of the Constitution, and is against public policy, and that plaintiff cannot acquire any legal right of any kind or character under such an illegal contract, either on the express contract, or an implied contract, or on quantum meruit; while, on the other hand, it is the contention of plaintiff that although the said contract is illegal and void and prohibited by law, still plaintiff should be permitted to recover on quantum meruit— that is, implied contract—the reasonable value of the labor and materials furnished the state in pursuance and performance of such prohibited contract. We are clearly of the opinion that, under the great weight of judicial authority, the state is right in its contention that said contract is wholly illegal and void, and against public policy, and cannot be enforced, in whole or in part, on any theory of any kind. Section 12, article 3, state Constitution, among other things provides: "Nor shall any member of the Legislature during the term for which he shall have been elected, or within one year thereafter, be interested, directly or indirectly, in any contract with the state or any county thereof, authorized by any law passed during the term for which he shall have been elected." Section 3, article 12, of the state Constitution further provides, among other things: "The Legislature shall never * * * authorize the payment of any claims or parts thereof created against the state, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void." Here, then, we have a contract which is expressly prohibited by the Constitution, the highest law of the state, and which unauthorized contract is declared to be null and void, in whole and in part.

The illegality of some contracts consists in the fact that the subject-matter of the contract is illegal without reference to the parties who enter into such contracts, such as contracts relating to the sale of intoxicating liquors in territory where such sale is prohibited and made penal, and such contracts are almost univer-

sally held to be illegal, and void, and against public policy, and of no effect whatsoever, and wholly uneforceable in the courts, either on the express contract, or on an implied contract, or on the quantum meruit. The case of Sullivan v. Horgan, 17 R. I. 109, 20 Atl. 232, 9 L. R. A. 110, is an illustration of this class of illegal contracts, where a person hired out as a clerk to a person who sold groceries and illegally sold intoxicating liquors, wherein it was held that such clerk could not recover on the quantum meruit for the value of his services as grocery clerk where the contract was inseparable. To the same effect are the decisions in the following cases: Brinkman v. Eisler ( City of Ct. N. Y.) 16 N. Y. Supp. 154; Bixby v. Moor, 51 N. H. 402; Foley v. Speir, 100 N. Y. 552, 3 N. E. 477; Cole v. Brown-Hurley Hardware Co., 139 Iowa, 487, 117 N. W. 746, 18 L. R. A. (N. S.) 1161, 16 Ann. Cas. 850; Chapman v. Haley, 117 Ky. 1004, 80 S. W. 190, 4 Ann. Cas. 714, and note. In the case at bar, and other cases of this class, it will be observed that the illegality consists of or arises, not from the inherent nature of the subject-matter of the contract itself, but from the express prohibition against the parties, situated in certain fiduciary or trust relationship toward each other, entering into contracts at all with each other, either directly or indirectly. In the case of Hope v. Park Association, 58 N. J. Law, 627, 34 Atl. 1070, 55 Am. St. Rep. 614, the court said: "An agreement which controls or restricts, or tends or is calculated to control or restrict the free exercise of a discretion for the public good, vested in one acting in a public afficial capacity, is illegal, and so reprobated by the courts that no redress will be given to a party who sues for himself in respect of it."

[2] A member of the state Legislature, by virtue of his office, stands in a fiduciary and trust relation towards the state; in other words, he is the confidential agent of the state for the purpose of appropriating the state's money in payment of the lawful contractual obligations of the state, and it seems to be almost universally held that it is against sound public policy to permit such an agent, or any agent occupying a like position, to himself be directly or indirectly interested in any contract with the state or other municipality, during the period of time of the existence of such trust and confidential relationship. The private interest of such an agent should not become antagonistic to his public

duty. Illegality of contract, arising from express prohibition of law based on public policy, renders the contract wholly null and void for any purpose, and precludes a recovery on an implied contract or on the quantum meruit; otherwise a means would be thereby furnished for the undoing of the law itself. In Berka v. Woodward, 125 Cal. 119, 57 Pac. 777, 45 L. R. A. 420, 73 Am. St. Rep. 31, the court said: "We can yield no assent to the contention that our laws apply only to express contracts. The statute itself is general in its terms * * * The only difference between an express contract and an implied contract is that in the former all of the terms and conditions are expressed between the parties; and in the latter some one or more of the terms and conditions are implied by law from the conduct of the parties. * * * To say that implied contracts were not prohibited would be to destroy the purpose and efficiency of the laws, and leave the people at the mercy of careless or unscrupulous officers." Also see Milford v. Milford Waterworks, 124 Pa. 610, 17 Atl. 185, 3 L. R. A. 122. The *implied* law would be thus placed above and superior to the provisions of the *express law*. Whatever the cause or basis of the illegality, whether the inherent nature of the subject-matter of the contract or whether prohibition against the contracting parties, the effect, so far as the enforcement of the contract is concerned, seems to be the same.

[3] The general rule is that illegal contracts—illegal by reason of being expressly prohibited by law—are unenforceable, and no one can acquire any legal right under such a contract. If one of the parties has performed in whole or in part he cannot avoid the contract and recover from the adversary party a reasonable compensation for such performance. No right, therefore, arises out of an illegal transaction even on the theory of constructive contracts. The law leaves the parties to illegal contracts where it finds them, and gives them no assistance in extricating themselves from the situation in which they have placed themselves—no recovery can be had for services rendered thereunder, either on the express contract, or on an implied contract, or on quantum meruit. Palmer v. State, 11 S. D. 78, 75 N. W. 818; Page on Contracts, § 519; Berka v. Woodward, 125 Cal. 119, 57 Pac. 777, 45 L. R. A. 420, 73 Am. St. Rep. 31; Smith v. Albany, 61 N. Y. 444; Milford v. Milford Water Co., 124 Pa. 610, 17 Atl. 185, 3

L. R. A. 122; City of Northport v. Northport Townsite Co., 27 Wash. 543, 68 Pac. 204; Bay v. Davidson, 133 Iowa, 688, 111 N. W. 25, 9 L. R. A. (N. S.) 1014, and note, 119, Am. St. Rep. 650; Grant v. Brouse, 2 Ohio S. & C. P. Dec. 24; Short v. Bullion Mining Co., 20 Utah, 20, 57 Pac. 720, 45 L. R. A. 603; Bank of United States v. Owens (U. S.) 2 Pet. 527, 7 L. Ed. 508. A contract founded on a statute making an act penal is void, although the statute does not pronounce it void or expressly prohibit it. A contract that is declared and pronounced to be null and void by express law is just as null and void as if made penal. The effect on the contract is the same in either case. Berka v. Woodward, supra; Brooks v. Cooper, 50 N. J. Eq. 761, 26 Atl. 978, 21 L. R. A. 617, 35 Am. St. Rep. 793; Seidenbender v. Charles, 4 Serg. & R. (Pa.) 8 Am. Dec. 682.

[4] To the general rule above stated there are exceptions which permit the party who has performed an illegal contract, and who has parted with consideration, to recover such consideration on the quantum meruit or quantum valebat. One exception to this general rule is where the law itself provides for such recovery. Another exception is where the parties are not in pari delicto, in which case the party not participating in the wrong may recover his consideration, but not the other party. It might be said that in the case present the defendant state is not in pari delicto, but this would not apply to plaintiff nor to the state officials who entered into this contract on behalf of the state. Another exception is where the contract prohibited is neither declared void by the law nor made or relates to a penal matter, but is prohibited only; and although the parties are in pari delicto, and where one party has received something of value from the other in execution of the contract, and where such contract involves no moral turpitude, or other reason of public policy forbidding the same, the courts will grant relief only to the extent of compelling the restoration of such property or the value thereof. Page on Contracts, §§ 519 to 525; Manchester Ry. Co. v. Railway Co., 66 N. H. 100, 20 Atl. 383, 9 L. R. A. 689, 49 Am. St. Rep. 582; Brooks v. Martin, 69 U. S. (2 Wall.) 71, 17 L. Ed. 732. Contracts falling within this last-mentioned exception are said by some courts to be voidable as distinguished from null and void. Such contracts were at common law regarded as voidable only. Note to Bay v. Davidson,

supra; Currie v. School Dist., 35 Minn. 163, 27 N. W. 922. Plaintiff claims to be within the last-mentioned exception, but we are of the opinion this contention is not tenable for the rason that such contracts made directly or indirectly by a member of the Legislature are expressly prohibited, and expressly declared to be null and void by the state Constitution; and for the further reason that such contracts are forbidden by and are against public policy; and for the further reason that said exception is not available as against the public, but is available only in favor of private individuals on the ground of estoppel. In speaking of this last-mentioned exception and the cases following thereunder, the court, in Berka v. Woodward, said: "Where contracts of public officials * * * have not been expressly forbidden by law, the principles which we have been considering have in some cases been applied, and a recovery has been permitted. In these cases it has been said that the demands of public policy have been satisfied by allowing the officer to recover, not according to the terms of his contract, but upon a quantum meruit. * * * But in no one of these cases, nor indeed in any case which has come under our observation, have the courts · entertained any contract, or any rights growing out of a contract, where either the consideration was base, or the contract was against the express prohibition of the law. This, then, is the undoubted rule, that when a contract is expressly prohibited by law, no court of justice will entertain an action upon it, or upon any asserted rights growing out of it. And the reason is apparent; for to permit this would be fore the law to aid in its own undoing." To the same effect is City of Northport v. Northport Townsite Co., 27 Wash. 543, 68 Pac. 204.

[5] Some contracts are prohibited by law for the benefit of some particular class of individuals, and it seems to be held that the persons for whose individual benefit such contracts are prohibited may waive such prohibition, or by their acts may be estopped from asserting such unlawfulness, and the courts grant recovery of the consideration on the quantum meruit or quantum valebat, under the exception to the general rule we are now considering, but this exception to the rule is not available when in contravention of any public reason or public policy. Section 2412, Civil Code; Berka v. Woodward, supra; Fowler v. Scully, 72 Pa. 156, 13 Am. Rep. 699.

[6] No public official, not even the Legislature, is authorized to waive the question of illegality of contract on the part of the state.  Section 3, article 12, Const., not only provides that such contracts shall be null and void, but that no *payment* either in whole or in part, shall be made on account thereof.  In Northport v. Northport Townsite Co., supra, the court said:  "The statute declares such contracts void, not merely voidable, and further declares that any claim for compensation for work done or supplies and materials furnished shall be void, and that, even if audited and allowed, it shall not be paid.  The statute seems to have shorn such a contract of all equitable considerations, when it declared that compensation shall not be paid by the treasurer." The statute of Washington under consideration in the Northport Case is no stronger than the provisions of the Constitution of this state.  In legal effect they are the same.

[7] The fact that the contract in question was made between Norbeck & Nicholson Co., a corporation, and the state, and not directly between Peter Norbeck and the state is immaterial.  Section 12, article 3, Const., says:  "Nor shall any member of the Legislature  *  *  *  be interested, directly or indirectly, in any contract with the state."  The interest of a stockholder of a corporation is within the reason of the rule prohibiting an officer from being interested, directly or indirectly, in a contract with the state or municipality, of which such stockholder is a public officer.  This point was also directly in issue in the Northport Case.  In San Diego v. San Diego Co., 44 Cal. 106, the court said:  "To hold, therefore, that one intrusted with property in a fiduciary capacity may rightfully bargain in reference to it with a corporation in which he holds stock would be to ignore all the evils which the rule in question was intended to prevent."  Mechem, Pub. Off. 839; Milford v. Milford Waterworks, 124 Pa. 610, 17 Atl. 185, 3 L. R. A. 122.

[8] That there was no personal moral turpitude or dishonesty of any kind involved in this case, and that the state may have made an advantageous contract and has suffered no loss by reason thereof is also immaterial, so far as the issues presented in this case are concerned.  We cannot and do not assume but what plaintiff, and the officers thereof, entered into the contract in question innocently and with the best of motives, but that fact

will not make valid or give vitality of any character to a contract declared to be null and void by the laws of this state. In the Milford Case, supra, the court, in speaking of a contract made in violation of a statute prohibiting city officials from being interested, directly or indirectly, in contracts with the city, said: "The act of 1860 is another and a valuable safeguard thrown around municipalities. It was passed to protect the people from the frauds of their own servants and agents. It may be there was no fraud, actual or intended, in the present case, but we will not allow it to be made an entering wedge to destroy the act of 1860." Mechem, Pub. Off. 839; Smith v. Albany, 61 N. Y. 444; Wardell v. Ry. Co., 103 U. S. 651, 26 L. Ed. 509. In Davison v. Bay, 133 Iowa, 688, 111 N. W. 25, 9 L. R. A. (N. S.) 1014, on this proposition the court said: "As such agent, it was his duty to purchase materials for the town of as good quality and for as low a price as it was possible to procure. But, if he himself became the seller, it was to his interest to sell such articles as he had, notwithstanding their quality, for the highest price he could obtain. His duty to the town and his private interests thus became directly antagonistic. It matters not if he did in fact make his private interests subservient to his public duties. It is the relation that the law condemns, not the results. It might be that in this individual case public duty triumphed in the struggle with private interests, but such might not be the case again or with another officer, and the law will not increase the temptation nor multiply opportunities for malfeasance." In Page on Contracts, § 507, it is said: "It is true that in refusing to enforce such contracts one party is given an advantage over the other. Courts cannot adjudicate rights under illegal contracts, however, and the interests of the parties must yield to considerations of public welfare." It seems to be a general rule or policy of the law not to permit one person, however honest or innocent his acts may be, to serve two masters whose interests are antagonistic. The Constitution makers of this state, as evidenced by section 12, art. 3, and section 3, art. 12, prohibiting certain contracts and also declaring them to be null and void and prohibiting payment thereon, in whole or in part, evidently intended to and did adopt and establish that rule as the public policy of this state.

[9] Some contention is made that section 3, art. 12, is not

applicable to the contract in question.  This section of the Constitution, in so far as it might relate to the contract involved in this case, provides that the Legislature shall never authorize the payment of any claims or any part thereof created against the state under any agreement or contract made without express authority of law, and all such unauthorized agreements and contracts shall be null and void.  It must be observed that this section of the Constitution related to contracts and agreements involving the expenditure of public money for and on behalf of the state, and which moneys are subject to be paid out, or more strictly speaking, are authorized to be paid out by the state Legislature. It was the evident intention of the Constitution makers to take from the Legislature the power to subsequently legalize contracts and agreements in relation to the expenditure of state moneys, which were not expressly authorized by some law at the time the contract was entered into; that is, the Legislature, by subsequent act, could not make legal a contract in relation to the expenditure of state money, where said contract was not authorized by some express law at the time of the making of such contract.  It was also the evident intention of the Constitution makers to make and declare null and void all agreements and contracts in relation to the expenditure of state money, which were not authorized by some express law at the time of the making of such contracts. By the provisions of section 12, art. 3, the contract in question is *expressly prohibited* by law.  We are of the opinion that any contract, whether express or implied, relating to the expenditure of public money for and on behalf of the state, which is *expressly prohibited* by the Constitution or other laws of the state, is included within the class of contracts designated in section 3, art. 12, as "any agreement or contract made without express authority of law," and therefore null and void.  A contract that is *expressly prohibited* by law is certainly not a contract that is *expressly authorized* by law.  Section 12, art. 3, provides that a member of the Legislature shall not be interested, directly or indirectly, in any such contract, which includes implied as well as express contracts. Berka v. Woodward, supra.  Section 3, art. 12, provides that *any* agreement or contract made without express authority of law shall be null and void.  The provisions of the latter section are sufficiently broad to include all kinds and all sorts of contracts, im-

plied as well as express. By no stretching of the rules of reason or logic are we able to arrive at any other conclusion than that both the said sections of the Constitution are applicable to the contract in question, and that the said contract by reason thereof is null and void. It is true that but for section 12, art. 3, the contract in question would have been authorized by law, as there was, at the time said contract was entered into, express law generally authorizing such a contract, but the difficulty is with the fact that said section 12, art. 3, actually exists and is a part of the Constitution, and actually prohibits a member of the Legislature from entering into such a contract. There was or could be no general or other law of the state authorizing such a contract, with this constitutional provision in existence. Any general law on the subject must of necessity be limited and modified by this constitutional provision. This constitutional provision is aimed at, and declares void, all unauthorized contracts, without regard to whether they are express or implied. As we have elsewhere herein noted, illegality of contract may arise: (1) From the ban on the subject-matter, or (2) from an inhibition against certain parties, on the grounds of public policy by reason of their trust relationship, entering into such contracts. Neither class of such illegality is favored over the other. In the eye of the law one class is just as illegal and just as unauthorized as the other.

The demurrer to plaintiff's complaint may be and hereby is sustained.

WHITING, P. J. While I am unable to concur with much that has been said by Justice McCOY in the foregoing opinion, yet it seems clear to me that he is correct in his conclusion that the demurrer to the complaint should be sustained. The importance of the questions presented must be my excuse for setting forth, at some length, the reasons for my special concurrence.

I do not believe that section 3, art. 12, of the Constitution has any application whatsoever to the facts of this case. As I read that section, it relates only to contracts which a Legislature might have authorized, and forbids the Legislature to pay for anything done for the state when, at the time the thing was done, no contract therefor had been authorized by statute; and provides that such unauthorized deeds and contracts shall be null and void. I am therefore of the opinion that, in so far as Justice McCOY has

based his opinion upon the claim that there is an express con-
stitutional provision declaring the contract before us to be null
and void, his views find no support in the Constitution.

.That no man can properly serve two masters—and especially
that no man can properly serve another and at the same time be
interested adversely to such other in the subject of such service
has long been recognized in that rule—applied, even at common
law, to all agents and persons in fiduciary positions, including
members of such administrative boards as city councils, school
boards, etc., forbidding such persons from contracting with the
corporation of which they are officers.   Based upon the same
rule of human nature and action, we find both constitutional and
statutory enactments forbidding public administrative officers from
contracting with their corporations, such enactments oft-times de-
claring such contracts to be null and void and even imposing the
penalties of the criminal law upon an officer who enters into same.
These constitutional and statutory provisions, as they have
changed from time to time, reflect the public conscience and reveal
that which is deemed public policy at the time of their enactment.
It is interesting to note that not one single authority cited in my
colleague's opinion construes a constitutional or statutory pro-
vision pertaining to contracts entered into by legislative officers,
and the only case that I have been able to find, where the court
had before it such a provision, is the case of Lillard v. Freestone
County, 23 Tex. Civ. App. 363, 57 S. W. 338.   In that case the
only question determined was that the express contract was void
and unenforceable; in the opinion, not a word is to be found sug-
gesting the reasons upon which the constitutional enactment in
question is based.

I believe that there will be found no case wherein the precise
question before us has been presented and discussed.   While from
the earliest days of the common law it has been recognized as
against public policy to allow administrative officers, acting in their
official capacity, to contract with or to perform work for that
public corporation of which they are officers, yet there can be
found upon the statute books of the states few, if any, statutes
forbidding an officer, such as a city councilman (who has not
only executive but also legislative power), from entering into a
contract with the city after his term of office has expired, and

forbidding it because such contract was one which had been authorized by some ordinance passed while such person was a member of such council. Such a statute would be exactly analogous to the constitutional provision before us, and the evil sought to be prevented would be exactly the same in kind, if not in degree, as that which might flow from allowing a member of the Legislature to enter into contracts authorized by laws passed while he was such legislator.

While statutes prohibiting *administrative* officers from contracting in their own behalf with the corporate body recognize the same fundamental proposition as does the constitutional provision now before us—namely, that no man can serve two masters, and that it is therefore against public policy to allow any one to act for himself when it is his duty to act for the public—yet there is a fundamental distinction between such provisions and those forbidding contracts by legislative officers, which distinction will be recognized when we stop to consider the nature of the service that is sought to be protected by each class of enactments. In the case of the administrative officer, the evil sought to be prevented is one liable to affect the contract itself, and one which would be present even after the contract had been entered into, because, so long as such officer holds his position of trust and confidence, there remains the danger that he will fail to perform fully his duty in carrying out the provisions of the contract, though the contract itself be perfectly fair in its terms. Speaking of the members of the Legislature, Justice McCoy says: "It seems to be almost universally held that it is against sound public policy to permit such an agent, or any agent occupying a like position, to himself be directly or indirectly interested in any contract with the state or other municipality during the period of time of the existence of such trust or confidential relationship."

My colleague is in error in such statement. The only contract that a legislator is forbidden to enter into with the state is a contract *authorized by a law passed while he was a legislator.* Even while a member of the Legislature, he is as free as any other person to enter into other contracts with the state. We have this constitutional provision, not because it is feared that a member of the Legislature would or might use his position to obtain an *unfair contract,* or would or might, owing to such position, at-

tempt to *avoid full compliance* with the terms of his contract—the fear of which has led to the enactment of laws forbidding administrative officers from being parties to contracts with their corporate bodies—but this constitutional provision was enacted through fear that a legislator might be, either consciously or unconsciously, influenced by selfish motives when voting for or against a bill.   If there were no danger that a legislator's vote might be so influenced, there would be absolutely no more reason to forbid his entering into a contract *authorized by the Legislature of which he was a member* than to forbid his entering into any other contract with the state.

In the case of an enactment forbidding a legislative officer from being interested in a contract authorized by a law passed during his term, the law looks to a time prior to and entirely separate and distinct from the time of the entering into, or of the performance of, the contract.   Such a contract is not forbidden because the contractor *as such* would be occupying an inconsistent position, in that he would, in entering into the contract, be attempting to serve the state as well as himself.   So far as the state and he are concerned, when entering into the contract, they deal with one another at arm's length exactly as would the state and any other contractor; as a member of the Legislature, the contractor is not presumed to be in any better position to obtain an unfair contract than if the contract related to some matter concerning whicih he was not forbidden to contract.   That the framers of our Constitution recognized that the legislator's position did not tend to affect the contract itself appears from the fact that the law not only forbids his entering into such a contract during the term for which he was elected, but during one year thereafter. Under some Constitutions such prohibition extends for all time. No person can presume that the framers of the Constitution imagined that any legislator, after he had gone out of office, would occupy a fiduciary relation to the state, or would be in a position enabling him to take an undue advantage of the state when contracting.   In enacting this provision of the Constitution the framers thereof had in mind, not the time of entering into the contract nor the relation of the parties at that or any subsequent time, not even any danger that the legislator might obtain an unfair contract but they had in mind solely the time and his relation to the

state *when he should cast his vote,* and they sought to remove from his path an influence that might affect *his vote.* This constitutional provision was designed to prevent any legislator, while he should be serving the state in the enactment of laws, from being tempted and influenced, either consciously or unconsciously, by any selfish interests.

In the case of a contract entered into by an administrative officer though forbidden by law, the public could often be protected by simply holding the express contract void and allowing a recovery on quantum meruit, it being the contract only that is tainted, and the evil to be guarded against being an unfair contract or a failure to fairly perform the contract. By a recovery upon the quantum meruit the wrongdoer would reap no benefit from the wrong and the public might be amply protected. But this is not true in the case of a contract entered into by a legislator in breach of a constitutional provision such as the one before us. The spirit of this constitutional provision would be fully broken, and as great evils might result where the legislator voted for a certain law when influenced, either consciously or unconsciously, by the hope of doing work thereunder and recovering the fair value of such work, as where such legislator was influenced by a hope of benefiting through an express contract; the fountain of legislation would be polluted in like manner though perchance not in like degree. The difficulty of determining the motives which may influence the legislator in his vote renders it not only impracticable but impossible to insure the purity of legislation except by the enforcement of provisions, such as the one before us, which do not permit of inquiry into such motives, but do remove the source from which might spring wrong motives. It follows that, under the constitutional provision in question, we can neither inquire into the motives of the legislator, nor into the value of the services rendered under the forbidden contract. Therefore, under the facts pleaded in the complaint, conceding, as I fully believe, that the plaintiff's president was not consciously—and probably not even unconsciously—influenced in his vote, or in anything that he may have done or failed to do as a member of the Legislature in relation to the bill which authorized the contract in question, by any motive of gain, and conceding that the state has been greatly benefited by the services performed, this court

can grant it no relief, and the demurrer to its complaint must be sustained.