## NORBECK & NICHOLSON COMPANY, Plaintiff, v. STATE OF SOUTH DAKOTA, Defendant.

### (144 N. W. 658.)

**States—Contract With State—"Authorized" by Legislature— Legislative Member, Interest of, in Contract.**

Under Const., Art. 3, Sec. 12, providing that no member of the legislature shall be interested, directly or indirectly, in any contract with the state authorized by any law passed during the term for which he was elected, a contract "authorized" by Laws 1911, Ch. 38, while a stockholder of plaintiff corporation was a member of the legislature, in the form of a special appropriation for the purpose of sinking and equipping an artesian well on the state university grounds, was, as to plaintiff corporation contracting for its sinking and equipment, void; the validity of the contract was in no manner dependent upon the sources from which state funds might be derived to discharge the indebtedness thereon, and, therefore, the fact that there were state funds, other than those so appropriated, in the hands of the Board of Regents of Education having in charge the university grounds, which might be expended for purposes similar to those contemplated by the appropriation act, or that said appropriation was thereafter exhausted by applying those funds in payment for such well and equipment, could not render the contract valid.

(Opinion filed December 22, 1913.)

Original action by Norbeck & Nicholson Company against the State of South Dakota, to recover a money judgment under an alleged contract for equipment by plaintiff of an artesian well sunk on state grounds. Upon demurrer to the amended complaint. Demurrer sustained.

*Sterling & Clark,* and *Sutherland & Payne,* for Plaintiff.

The power of the Board of Regents to enter into the contract with the plaintiff, set forth in the complaint, was ample, with this limitation only, that funds must first be provided for carrying out this contract. When funds have been provided, the authority of the Board of Regents to contract and expend money is complete, and limited only by their discretion as such public officers. Secs. 204, 205, Pol. Code. By the Enabling Act of Congress, which created the State of South Dakota, lands were granted to the state, the proceeds of the sale of which, should "constitute a permanent fund to be safely invested and

held by said state, and the income thereof to be used exclusively for university purposes." (Section 14, Enabling Act.)

By Section 7, Article 8, Constitution, state, it is provided that the interest and income from the proceeds of the sales of such lands, and the rents of such lands remaining unsold, "shall be inviolably appropriated and applied to the specific objects of the original grants or gifts." An appropriation may be made by direction of the Constitution and is self-enacting, and needs no act of the legislature to make it effective. Section 21, Chapter 58 Laws 1897, re-enacted by Section 220, Political Code. State ex rel. Ledwith v. Bryan, 120 N. W. 916 (Neb). No further or additional appropriation is necessary, as the appropriation is a continuing one. Cutting v. Taylor, 3 S. D. 11.

It is alleged in the amended complaint, and admitted by the demurrer thereto, "that during the fiscal year beginning July 1st, 1910, and ending June 30th, 1911, the State of South Dakota received moneys as interest or rents derived from the lands granted by the United States to the State of South Dakota, for the maintenance of the State University of South Dakota, in excess of the moneys spent from said fund, amounting to $4649.18, and said amount of money was available at the time the said contract above mentioned, was entered into. Said moneys, in the above amount, have not, since the date of said contract, or at any time been spent or disbursed and were available for the maintenance of the University at the commencement of this action."

Every element necessary to authorize the making of the contract with the plaintiff existed. Section 205 of the Political Code gave the authority to the Board of Regents; the income and rents derived from the endowment lands furnished the funds; Section 220 of the Political Code appropriated the funds.

The income from the proceeds of the sales of the endowment lands, and the rents from such lands are paid directly into the state treasury and are not collected by any state institutions, or by any state board, and Chapter 191 of the Laws of 1901, and the amendment thereto, Laws 1911, Ch. 168, have no reference to the collection, control of, or the disbursement of the income and the rents derived from the endowment lands of the University.

Laws 1911, ch. 38, was not intended to create any additional power or authority in the Board of Regents, but the purpose of

it was simply to furnish the sum of $5,000 to be used for the purposes enumerated therein, to-wit: Sinking a well at the State University and equipping the same with the proper and necessary pumping apparatus and water mains.   It further appears by paragraph VI of the plaintiff's amended complaint, that all of the moneys provided for by such special appropriation were regularly paid out, under properly verified vouchers of the Board of Regents, for the purpose for which such appropriation was made. There was nothing in the contract of the plaintiff requiring that it should be paid out of any particular fund.   The plaintiff is entitled to payment out of any fund available for that purpose.

Plaintiff was not prohibited, generally, from entering into contracts with the state.   "The only contract that a legislator is forbidden to enter into with the state, is a contract *authorized by a law passed while he was a legislator."* 142 N. W. 848.   There is no necessity for prohibiting payment from the endowment fund. State ex rel Slack v. Owen, 7 Wyo. 84.

### IN REPLY.

The series of statutes beginning with Chapter 191, Laws of 1901, and ending with Chapter 168, Laws of 1911, can only pertain to a *part* of the expenditures of the Board, namely, to the funds therein named, and Section 222 could only be in *part* repealed.

Section 220 was an existing statute in 1911, when plaintiff's contract with the state was made, and was authority to the Board of Regents to use the income of the University derived from its endowment lands, and there being money in such fund, same should be ordered paid in satisfaction of plaintiff's claim.

*Royal C. Johnson,* Attorney General, for Defendant.

Chapter 168, Laws of 1911, was passed with an emergency clause, and took effect March 2, 1911.   The amended complaint alleges that the contract was entered into on or about the 15th day of March, 1911.

The contract was one in which Mr. Norbeck was prohibited by Section 12, Article III., State Constitution, from being interested, directly or indirectly.   142 N. W. 848.   "That said contract is wholly illegal and void and against public policy, and cannot be enforced, in whole or in part, *on any theory of any kind."*   Id.   The balance remaining in such endowment fund at

the close of a fiscal year, which was required to be carried forward and become a part of the receipts of the succeeding fiscal year, was appropriated and made available by Chapter 168, Laws of 1911, for the payment of indebtedness incurred during the preceding fiscal year.

Chapter 38, Laws of 1911, was intended as the exclusive fund available for the payment of the *expense of sinking* the well at the State University, and negatives the contention that the Regents of Education had authority to contract for the payment of the expense of sinking such well out of the local and endowment fund. No doubt where a special appropriation for improvements is insufficient to complete the work, the local and endowment fund may be used to pay for the deficiency, *unless the special act should provide otherwise,* provided the contract therefor be lawful. Here it appears that the special appropriation act did, in effect, recite that there were no other funds available.

For reasons of public policy there can be no recovery under the amended complaint.  142 N. W. 849.

*Cheney v. Unroe,* 166 Ind. 550, 77 N. E. 1041, 117 Am. St. Rep. 391, 392. Beebe. v. Board of Supervisors, 64 Hun., 377, 19 N. Y. Supp. 629, 630.  Pickett v. School Dist. 25 Wis. 551, 3 Am. Rep. 105.  Palmer v. State, 11 S. D. 78, 75 N. W. 818.

## IN REPLY.

Section 220, political code, is repealed by chapter 166, laws of 1995. Under Laws 1901, ch. 191, all moneys received or collected by any state board, or department of history, or by any superintendent or other officer of any public institution of this state for the use and benefit of the state institutions, *whether from fees,* or board of inmates therein, *or from any other source whatever,* except the Hatch and Morrill funds received from the United States, are appropriated by this statute, and the manner of their disbursement is fully covered.  The words, "or from any other source whatever," clearly include any money that is in any way mentioned by section 21 of the 1897 law, being Sec. 220 Pol. Code, and chapter 191, laws of 1901, was especially intended to repeal sections 21 and 23 of the 1897 act, and did repeal those provisions after July 1, 1901.

However, in the revision of the political code in 1903, both these statutes were incorporated therein, chapter 161, laws of

1901, being incorporated in the code as section 313. These provisions were therefore directly in conflict until chapter 166, laws of 1905, took effect. Section 220 or 222, Political Code, were not in force since the amendment of 1905, which clearly repealed those provisions. Therefore section 220 was not an appropriation of funds at the time this contract was entered into. Furthermore, chapter 168, laws of 1911, is a revision of section 313, political code, as amended by chapter 166, laws of 1905, and those earlier statutes are expressly repealed by section 6 of the 1911 law, which appropriates the funds from which the consideration of the contract in question was to be paid, under the amended complaint. Under Laws 1911, Ch. 168, the vouchers are to be audited by the state auditor. Section 71, Political Code. Sawyer v. Mathew, 10 S. D. 18; 71 N. W. 141.

SMITH, J. This cause was before this court on a demurrer to the original complaint, which was sustained upon the ground that the contract was one authorized by an act of the Legislature, was made between the state and a person who was a member of the Legislature at the time the act was passed, and was therefore void. 32 S. D. 189, 142 N. W. 847. The demurrer being sustained, plaintiff, exercising its statutory right, amended its complaint. The present demurrer is to the complaint as amended. The amended complaint pleads the identical contract alleged in the original complaint, and the first six paragraphs thereof are the same. Certain allegations of the original complaint relied upon as grounds for a recovery upon quantum meruit are omitted.

The amended complaint alleges matter to the effect that the state Legislature, at its session of 1911, appropriated the sum of $5,000 for the purpose of sinking a well at the university, and equipping the same with proper and necessary apparatus and water mains; that all the moneys provided by such special appropriation were paid out in equipping said well, constructed by the plaintiff as therein set forth, with necessary pumping apparatus and water mains, and said special appropriation has been entirely exhausted; that, at the time said contract was entered into, the Board of Regents had in their hands and under their control certain moneys derived from other sources, which were available and sufficient to discharge the indebtedness created by said contract; that demand for payment has been duly made and refused by the

state auditor; and prays judgment for the amount due under the contract. It is further alleged that, at all times mentioned in the contract, Peter Norbeck was a stockholder and president of the plaintiff corporation. From these allegations it is apparent that the entire transaction—the contract and well—are the same described in the original complaint. It is also disclosed by the amended complaint that the contract was one "authorized" by chapter 38, Laws 1911, and that Peter Norbeck was then a member of the Legislature.

Section 12, art. 3, of the state Constitution, declares that no member of the Legislature shall be interested, directly or indirectly, in any contract with the state, authorized by any law passed during the term for which he shall have been elected, or within one year thereafter. Under the former decision of this court upon the demurrer to the original complaint 32 S. D. 189, 142 N. W. 847, this identical contract was held void because in violation of this provision of the Constitution. It cannot therefore be made the ground of recovery in this action, even though there may have been funds available derived from other sources than the appropriation of 1911. The validity of the contract is in no manner dependent upon the sources from which state funds may be derived to liquidate the indebtedness created by the contract.

We do not express any opinion as to the power or authority of the Board of Regents to enter into a contract other than one authorized by a special act of the Legislature, for improvements on the university grounds of the general character of those here involved, and to pay for such improvements out of funds derived from sources other than a special appropriation (by act of the legislative assembly). The contract here involved concededly was entered into pursuant to and in execution of an act of the legislative assembly, and its validity depended upon the conditions existing at the time of its execution, and not upon acts or conditions done or arising subsequently. If the contract itself was void at the time of its execution, because of the constitutional inhibition, no circumstances or facts thereafter arising could change its status or render it valid. It would follow that the subsequent expenditure of the special appropriation provided by the act, or the fact that the board may possess other funds

which might be expended for purposes similar to those contemplated by the act, could not render it valid, so that it might be made a ground of recovery in this action. We think it clear that payment under this contract could only be made out of the special appropriation.

In short, the alleged new matter set out in the amended complaint consists only of facts and circumstances arising long subsequent to the execution of the contract, and could in no manner cure or affect its original invalidity. The contract upon which plaintiff seeks recovery was authorized by a legislative act, and is within the very language of the Constitution which says that no member of the legislative assembly shall be interested, directly or indirectly, in any contract authorized by a law passed during the term for which he shall have been elected. It therefore follows that, for the reasons announced in our former opinion herein, the contract was invalid when entered into, and none of the additional acts or facts alleged in the amended answer would render it valid, or in any manner change or affect the legal rights of the plaintiff thereunder.

The demurrer must be sustained.