ASPHALT SURFACING COMPANY, Plaintiffs and Appellants,

v.

SOUTH DAKOTA DEPARTMENT OF TRANSPORTATION; the South Dakota Transportation Commission; James R. Myers, Secretary of the South Dakota Department of Transportation; Roger Bernard, Robert Appelwick, James Rothstein, D. William Hustead, Herman I. Lerdal and Richard Helsper, Commissioners of the South Dakota Department of Transportation; and Vern Larson, South Dakota State Auditor, and Batzer Construction Co., A Foreign Corporation, Defendants and Appellees.

No. 15026.

Supreme Court of South Dakota.

Considered on Briefs Feb. 12, 1986.

Decided April 9, 1986.

James E. McMahon, of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for plaintiffs and appellants.

Camron Hoseck, Asst. Atty. Gen., for defendants-appellees except Batzer Const. Co., Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

T. Michael Carter, of Maher, Carter & Bode, Pierre, and F. Patrick McGrath, St. Paul, Minn., for defendant-respondent Batzer Const. Co.

FOSHEIM, Chief Justice.

Asphalt Surfacing Company (Plaintiff) sought a declaratory judgment and injunction relief when they were not awarded three road improvement contracts with the South Dakota Department of Transportation (DOT). The trial court ruled against Plaintiff and denied the injunctions. We affirm.

In April of 1985, DOT held a bid letting for three projects. Plaintiff was the apparent low bidder but the DOT Commission determined that South Dakota Constitution article III, section 12, prohibited awarding the contract to Plaintiff. This section provides:

> No member of the Legislature shall, during the term for which he was elected, be appointed or elected to any civil office in the state which shall have been created, or the emoluments of which shall have been increased during the term for which he was elected, nor shall any member receive any civil appointment from the Governor, the Governor and senate, or from the Legislature during the term for which he shall have been elected, and all such appointments and all votes given for any such members for any such office or appointment shall be

void; nor shall any member of the Legislature during the term for which he shall have been elected, or within one year thereafter, be interested, directly or indirectly, in any contract with the state or any county thereof, authorized by any law passed during the term for which he shall have been elected.

The resurfacing contracts have since been awarded to another company. Both parties request, however, that the issue, although moot, be determined.

■ We find the public interest exception to the general rule against deciding moot issues applicable. A contemporary precedent interpreting this constitutional section will control other State contracts. A reoccurrence is likely and will suffer the same mootness problem before this court may render a decision. *In re Application of Northwestern Bell Telephone Co.,* 326 N.W.2d 100, 102–03 (S.D.1982).

■ The key issue presented is whether article III, section 12 of the South Dakota Constitution prohibits the State from awarding a contract for highway repair to a company because its president was a legislator at the time the general appropriation bill covering the repair funds was passed. This issue may be divided into subparts: (1) whether passage of a general appropriation bill is the type of authorization contemplated by the constitutional provision, and (2) whether the constitutional provision applies to contracts awarded to the lowest bidder. We answer both in the affirmative.

This court has strictly interpreted article III, section 12. *Palmer v. State,* 11 S.D. 78, 75 N.W. 818 (1898); *Norbeck & Nicholson Co. v. State* (I), 32 S.D. 189, 142 N.W. 847 (1913); and *Norbeck & Nicholson Co. v. State* (II), 33 S.D. 21, 144 N.W. 658 (1913). In *Palmer,* the court said:

The language of the constitution is plain. Its meaning cannot be mistaken. The purpose of the provision is apparent. It is intended to preclude the possibility of any member deriving, directly or indirectly, any pecuniary benefit from legislation

enacted by the legislature of which he is a member. It is one of the most important of the many reforms attempted by the framers of our organic law. It is intended to remove any suspicion which might otherwise attach to the motives of the members who advocate the creation of new offices or the expenditure of public funds.... It was a contract authorized by laws passed in the term [of] legislature for which plaintiff was elected, executed during the term for which he was elected, and in which the constitution expressly declares he shall not be directly or indirectly interested. His case is clearly within the letter and spirit of the constitutional inhibition.... The question of his good faith is not involved. All contracts between the state and members of the legislature made during the prohibited period are invalid, and it is wholly immaterial whether they are beneficial to the state or not.

*Palmer,* 11 S.D. at 80–81, 75 N.W. at 819.

A casual reading of *State ex rel. Grigsby v. Ostroot,* 75 S.D. 319, 64 N.W.2d 62 (1954), perhaps indicates that the passing of years has mollified this court. Not so. In *Ostroot,* an original proceeding was begun to determine whether a candidate for gubernatorial nomination was eligible for election to that office since he had voted, as a member of the legislature, to increase the salary for the position he sought. The court decided per curiam that a 1946 amendment to article XXI, section 2, addressing constitutional officer's salaries, was obviously not intended to be overridden or defeated by the older constitutional provision and the State legislator was deemed eligible. The court said:

[I]t was the clear purpose of the [1946] amendment to authorize the legislature to fix the salary of its members, and as a practical matter should we hold that after fixing the salary that every member of that legislature would be ineligible for re-election, the result would simply be that the salary would not be fixed, especially is this true in view of the requirement of the two-thirds vote. Certainly if it were not the intention to render ineligi-

ble a legislator who increased his own salary from running for re-election, it was not the intention to render a member of the legislature which voted an increase for some other office, in the same class so far as salaries are concerned as that of the legislator, ineligible to run for such office.

*Id.* at 327–28, 64 N.W.2d at 66.

In other words, a specific constitutional amendment relating to salaries, rather than a relenting court, was the controlling factor in *Ostroot.* We accordingly adhere to our interpretation of article III, section 12, presented in *Palmer* and both *Norbeck* decisions.

Article III, section 12 specifically prohibits a contract with the State if "authorized by *any* law" during the legislator's term. (Emphasis added.) Our constitutional framers obviously intended a broad prohibition. *Palmer,* 11 S.D. at 80–81, 75 N.W. at 819. This leaves little question that section 12 applies to a general appropriation bill as well as more specific legislative decisions.

For the same reason, we likewise find no merit in Plaintiff's argument that the constitutional provision is not applicable to contracts awarded on the basis of the lowest submitted bid. Article III, section 12 makes no such exception. Accordingly, any apparent legislative attempt to circumvent the plain meaning of the Constitution by statute, SDCL § 5–23–14,[1] must perish.

■ It does not follow, however, that SDCL § 5–23–14 is declared unconstitutional. Since we can construe the statute to be constitutional, we must do so. *Frawley Ranches, Inc. v. Lasher,* 270 N.W.2d 366, 369 (S.D.1978).

■ While the statute clearly cannot obviate article III, section 12 of the Constitution, it does have a limited application. The Constitution prohibits State contracts with a legislator, during or within one year of his term, which were authorized during the term. The statute takes this constraint one step further and states that contracts with legislators, valid under article III, section 12 of the Constitution, may only be awarded if the legislator is the lowest responsible bidder. Construing these enactments together, a present legislator may benefit from a contract with the State if the contract was not authorized during his term and he is the lowest responsible bidder. A former legislator, less than one year out of office, may benefit from a State contract if it was not authorized during his elected term. If a legislator has been out of office more than one year, neither the constitutional provision nor statute prohibit his contracting with the State.

The decision of the trial court is affirmed.

MORGAN, J., and HERTZ, Circuit Judge acting as a Supreme Court Justice, concur.

HENDERSON, J., concurs with a writing.

WUEST, J., disqualified.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (concurring).

For posterity, for synthesis of my vote, for elaboration of facts to sustain the justification of my vote, some observations:

(1) The facts of this case were stipulated.

---

1. SDCL § 5–23–14 (prior to 1985 amendment): No contract shall be awarded to any officer or employee of the state, nor shall any part of any contract be awarded to any firm, association, or corporation, in which any state officer or employee shall be interested, either directly or indirectly, and any contract made in violation of the provisions of this chapter shall be absolutely void; provided, however, that the provisions of this section shall not apply to such notaries public nor to such other state officers or employees serving on boards or commissions, who are not drawing a salary from the state. The provisions of this section shall also not apply to a member of the state Legislature when such person is the lowest responsible bidder in accordance with the provisions of chapter 5–18 if such contract award is not in violation of the provisos of section 12 of Article III of the state Constitution. Any officer or employee of this state who knowingly violates this section is guilty of a Class 2 misdemeanor.

(2) A State Senator signed and submitted three bids to an agency.

(3) While he was a member of the 1985 Legislature, the funding for three projects, from whence the three bids were birthed, were appropriated.

(4) Without the funding, the projects could not be brought to fruition.

(5) On the date of the vote on the general appropriations bill, 1985 Legislative session, State Senator Thomas W. Krueger was "excused" from voting on the appropriations bill.

(6) State Senator Krueger was president of Asphalt Surfacing Company, appellant herein, when he signed the three bid sheets.

(7) One Henry Carlson, Jr., is the majority stockholder of Henry Carlson Company which owns 100% of the stock of Asphalt Surfacing Company; he served in the Legislature as a State Senator from January 1983 until January 1985. Thus, both of these legislators had an interest with the company submitting the bids; and, therefore, an award of the contract is prevented unto the said Asphalt Surfacing Company for highway repair work by the absolute proscription of Article III, § 12, of the South Dakota Constitution.