** Summary ** MEMBER OF LEGISLATURE — IMPROPRIETY OF WIFE CONTRACTING WITH STATE It would be improper in view of the provisions of Article V, Section 23 of the Oklahoma Constitution for the wife of a member of the Oklahoma Legislature to lease property to the Department of Corrections of the State of Oklahoma. The Attorney General has received an opinion request wherein you ask the following question: " Is it unlawful or improper for an individual who is presently and has been for the past two years a member of the Legislature of the State of Oklahoma, to have his wife, in whose name the title to real estate is vested, although he has signed notes and mortgages affecting the same, to lease the said property to the Department of Corrections of the State of Oklahoma?" Title 74 O.S. 1409 [74-1409] (1971), is the basic statute dealing with the ethical behavior of state Legislators. It states: "Acts prohibited by Legislator. — No Legislator shall: "(a) Introduce, promote or vote for any proposed special interest legislation on his own behalf, or on behalf of any other person, corporation, partnership, trust or business entity which directly affects such Legislator or in which such Legislator has or may have any substantial financial interest other than legislation affecting legislative salaries, expenses and allowances; provided, that this provision shall not preclude a Legislator from introducing, promoting or voting for any proposed general legislation which directly affects him or in which he has or may have any substantial financial interest; "(b) Directly or indirectly accept or request any compensation, gift, loan, entertainment, favor, or service given for the purpose of influencing such Legislator in the discharge of his official duties. Provided, however, that this section shall not apply to bona fide campaign contributions; "(c) Use his official position to secure special privileges, exemptions or compensation for himself, except as may be provided by law; "(d) Disclose confidential information acquired by reason of his official position to any person, group, or others not entitled to receive such confidential information, nor shall he use such information for his personal gain or benefit; "(e) Sell or cause to be sold, either as an individual or through any business enterprise in which he holds a substantial financial interest, goods or services to any state agency unless the contract is awarded pursuant to statutes relating to the Purchasing Division of the State Board of Public Affairs; "(f) Receive any compensation for his services as a Legislator from any source other than the State of Oklahoma, unless otherwise provided by law; "(g) Accept other employment which would impair his independence of judgment in the performance of his public duties. "(h) Receive or agree to receive compensation for representing or assisting any person or business in any transaction involving the State; provided, this subsection shall not apply to representation of a person or business when such representation requires the Legislator to possess a special license, permit, or technical knowledge to properly represent the person or business. This Act shall not be interpreted to prevent an attorney to appear in behalf of his client in any court, board or commission; or "(i) Be employed by or receive any commission, fee, or compensation from the State, except compensation in allowance for expenses provided by law to a Legislator. "Nothing in this section shall prohibit a Legislator from representing or assisting a person or business in any manner before an administrative or judicial body of the State when the matter merely involves a proceeding by a person or business against another person or business." Although it may be possible that some ethical question, concerning conflict of interest, may arise with respect to the application of provisions, (a) through (i) of Section 1409, it is our opinion that none of these provisions would apply, absent specific facts and circumstances which have not been presented. However, Article V, Section 23
of the Oklahoma Constitution states: "No member of the Legislature shall, during the term for which he was elected, be appointed or elected to any office or commission in the State, which shall have been created, or the emoluments of which shall have been increased, during his term of office, nor shall any member receive any appointment from the Governor, the Governor and Senate, or from the Legislature, during the term for which he shall have been elected, nor shall any member, during the term for which he shall have been elected, or within two years thereafter, be interested, directly or indirectly in any contract with the State, or any county or other subdivision thereof, authorized by law passed during the term for which he shall have been elected." (Emphasis added) This section of the Constitution was construed by the Attorney General in an opinion issued October 4, 1963, which held as pertinent here, that no member of the Legislature may receive compensation out of the general fund of any school district to which there has been apportioned by the State Board of Education out of the appropriated funds any sum of money as state aid. The opinion was based upon the underlined portion of Article V, Section 23 of the Oklahoma Constitution cited above. This opinion was challenged by a member of the Legislature seeking payment on a teaching contract in the case of State v. Board of Education of the Dependent School District No. D-38, Okl., 389 P.2d 356. In construing this portion of the constitutional provision, the Oklahoma Court relied on the holding of the Supreme Court of South Dakota in the case of Norbeck Nicholson Company v. State, 32 S.D. 189, 142 N.W. 847, wherein the South Dakota Supreme Court construed a provision of the South Dakota Constitution which is identical to the above quoted clause of our Constitution. The South Dakota court stated: "A member of the State Legislature, by virtue of his office, stands in a fiduciary and trust relation towards the State; in other words, he is the confidential agent of the State for the purpose of appropriating the State's money in payment of the lawful contractual obligations of the State, and it seems to be almost universally held that it is against some public policy to permit such an agent, or any agent occupying a like position, to himself be directly or indirectly interested in any contract with the State or other municipality, during the time of the existence of such trust and confidential relationship. . ." (Emphasis added) See also Baskin v. State ex rel Short, Attorney General, 107 Okl. 272, 232 P. 388. An improper or unlawful act by a Legislator under this section, would turn upon his direct or indirect interest in any contract. Therefore, of primary importance to a determination here is the application of the definition of direct or indirect interest to the set of facts you have outlined previously. The Supreme Court of the State of Oklahoma has construed the word "directly" in the case of Employers' Casualty Company v. Underwood, Okl., 286 P. 7 (1930), wherein the Court stated at page 10: "The word 'directly,' as used herein, is used in the sense in which it is generally used and understood, which is 'proximately, or without intervening agency or person.' " Under the set of facts as you have them outlined, it appears obvious that the individual in this particular instance does not have a "direct" interest in the property because the ownership of such property is vested in the wife's name. Turning to the construction of the word "indirectly" the United States District Court for the Western District of Oklahoma provided a definition in the case of Oklahoma National Bank v. Reconstruction Finance Corporation, W.D. Okla.,127 F. Supp. 156 by stating: ". . . The word indirectly . . . includes all methods of doing the proscribed thing." A case analogous to the situation here, although involving a judge rather than a Legislator, was decided by the Supreme Court of the State of Missouri in the case of Githers v. Butler County, 165 S.W.2d 650 (1942) wherein the Supreme Court of the State of Missouri construed a statute similar to our constitutional provision. That portion of the statute applicable here stated: "No judge of any county court in the State shall directly or indirectly become a party to any contract to which the county is a party." In this case the wife of the county judge purchased two tracts of land from the county where the judge presided. At the trial of the case the judge's wife testified that she owned property in her own name and had money of her own and that the land was purchased with her separate money, on her own initiative and without consulting her husband. Specifically, she testified: "My husband did not know I bought this land. I did not buy it for him or his agent." Despite this testimony the Court reversed the lower court and held the sale invalid. In so doing the Court said: "Though the husband may have no present interest in his wife's separate estate, there can be no question but that because of the relationship he does have such beneficial interest in her property and affairs as to be 'indirectly' interested in the contract to which she is a party." It appears clear under the set of facts you have outlined for this opinion that an individual who is a member of the House of Representatives and whose wife is attempting to lease property to an agency of the State of Oklahoma would have an indirect interest sufficient to disqualify the wife's entry into such a contract as long as that individual remained a member of the Legislature of the State of Oklahoma. It is, therefore, the opinion of the Attorney General that your question be answered as follows: It would be improper in view of the provisions Article V, Section 23 of the Oklahoma Constitution for the wife of member of the Oklahoma Legislature to lease property to the Department of Corrections of the State of Oklahoma. (Conflict of Interest, Legislator) ** See: opinion No. 91-529 (1991) (Robert H. Mitchell) ** SEE: OPINION NO. 74-268 (1975) **