ROBERT L. CARR CO., a Minnesota corporation, Plaintiff and Appellant,

v.

CITY OF SIOUX FALLS, a South Dakota municipal corporation, Defendant and Appellee.

No. 15698.

Supreme Court of South Dakota.

Considered on Briefs Oct. 9, 1987.
Decided Dec. 16, 1987.

John R. Hughes of Fisher & Hughes, Sioux Falls, for plaintiff and appellant.

Roger A. Schiager of Schiager & Peters, Sioux Falls, for defendant and appellee.

MORGAN, Justice.

Robert L. Carr Company (Carr) commenced this action for declaratory judgment against the City of Sioux Falls, a municipal corporation (City), seeking to determine City's liability for a 1000–gallon underground diesel fuel storage tank, pumps, and concrete work furnished and installed by Carr and its subcontractors. The action was tried to the court on a stipulation of facts and the trial court held against Carr and in favor of City, from which decision Carr appeals. We affirm.

Carr was the successful bidder on a $12,-500,000 wastewater treatment facility for City, which contract was let in accordance with legal requirements. It is undisputed that the facility constructed was a public improvement within the meaning of SDCL 5–18–1(2). The contract provided for the installation of certain underground tanks for unleaded fuel, waste oil, and lube oil; however, it did not call for the installation of an underground diesel fuel tank.

Approximately one year after entering into the contract, City received an EPA grant for the purchase of diesel-powered sludge-hauling equipment to be used at the facility. City then determined that it should have on-site diesel fuel storage. City initiated a "Change Proposal Request" to Carr for a quotation on the installation of a diesel fuel tank. A quotation of $10,-225 was accepted by City and Carr installed the diesel tank. Change Orders were submitted to City for payment; however, City's finance officer determined that City could not legally pay for the installation without violating SDCL 5–18–2, which requires bidding on public improvements

when the amount of the contract equals or exceeds $3,500. Carr commenced this action and the trial court agreed, stating:

> Under equity principles the plaintiff is entitled to recover. However, equity has nothing to do with this lawsuit. The City erroneously determined the tank, pump and related items were incidental to the underlying contract. They were not and should have been bid pursuant to SDCL 5–18–2. The City cannot legally pay plaintiff.

Judgment was entered dismissing the action on its merits and Carr appealed.

Carr first contends on appeal that the tank, pump, and related items were incidental to the complete execution of the underlying contract, thus competitive bidding was not required. Alternatively, Carr urges that since the tank, pump, and related items were incidental to the underlying contract, City is liable for the work under the "cost plus percentage" provisions of the original contract.

We first establish the standard of our review. Since the case was submitted to the trial court on stipulated facts, which were adopted by the trial court as its findings of fact, the issues before us are questions of law or mixed questions of fact and law. We are therefore not bound by the clearly erroneous standard but, rather, we must consider whether the trial court simply made a mistake of law. *Haggar v. Olfert*, 387 N.W.2d 45 (S.D.1986); *State v. Anderson*, 316 N.W.2d 105 (S.D.1982); *Ayres v. Junek*, 247 N.W.2d 488 (S.D.1976).

At all times pertinent hereto, SDCL 5–18–2 required that contracts of a public corporation for public improvements be let for bids when the amount of the contract equalled or exceeded $3,500.* It is unlawful for a public corporation to enter into a contract in violation of SDCL 5–18–2 et seq. and, if entered into, such contract is null and void and of no force and effect. SDCL 5–18–19.

Carr first argues that the work comes within the terms of the underlying contract and Carr should therefore be compensated.

Carr grounds this argument on selective provisions taken from the contract document:

1. Equipment would include, but not necessarily be limited to '(a) 500–gallon underground unleaded fuel storage tank, (b) 1000–gallon underground waste oil storage tank, (c) 550–gallon lube oil storage tank.'

2. 'Although such Work is not specifically shown or specified, all supplementary or miscellaneous items, appertenances and devices incidental to or necessary for a sound, secure, complete and compatible installation shall be furnished and installed as part of this Work.'

3. City reserved the right 'to make necessary alterations of, deviations from, alterations to, or deletions from the contract, or [to] ... require the performance of extra Work neither covered by the specifications nor included in the Proposal, but forming a part of the Work contract [sic] for.'

Generally, it is for the court and not a jury to construe contracts and the question of ambiguity is a question of law. *Groseth International Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987); *Buhl v. Bak*, 400 N.W.2d 903 (S.D.1987); *City of Sioux Falls v. Henry Carlson Co.*, 258 N.W.2d 676 (S.D.1977).

■ The contention that the installation of the diesel fuel tank was within the terms of the underlying contract cannot be supported either by the plain language of the contract or the intentions of the parties. We hold that the language referring to "alterations" or "deviations" was intended to encompass only those ordinary and comparatively unimportant departures from the plans and specifications which would effectively complete the work as contemplated. *See, Seim v. Independent Dist. of Monroe*, 70 S.D. 315, 17 N.W.2d 342 (S.D. 1945). The phrase "sound, secure, complete and compatible installation" likewise refers to an installation clearly within the contemplation of the parties at the time the contract was entered into. It is obvious that City could not have, with certainty,

---

* The statutory requirement was raised to $5,000 in 1985.

anticipated the need for a diesel fuel tank at the time of contracting with Carr. The EPA grant to finance buying the loader, which triggered the need for the tank, did not materialize until a year later. Although the size, number and character of the tanks itemized in the contract could have changed, neither City nor Carr could have anticipated the need for a diesel fuel tank. Finally, the installation of a diesel fuel tank was not necessary for a sound, secure, complete and compatible facility.

■ Carr's argument on the "cost plus" provision of the contract is equally unpersuasive. For all the reasons we have previously discussed, the installation of the tank simply cannot be incidental to the underlying contract. To hold otherwise would turn every public improvement contract into an open-ended agreement for additions from time to time that were not within the contemplation of the parties at the time the underlying contract was entered into.

Although it is a harsh rule, and we can sympathize with Carr's predicament, we are compelled to adhere to statutory and caselaw directives. Contractors who do business with public entities do so at their peril. They are charged with the duty to be familiar with the statutory requirements and to adhere to them.

We affirm the judgment of the trial court.

WUEST, C.J., and MILLER, J., concur.

HENDERSON and SABERS, JJ., concur specially.

HENDERSON, Justice (concurring specially).

Public policy, essentially, forbids the enforcement of this contract. The entire purpose of the statute, in question, as amended, is to protect the public. *See Bak v. Jones County,* 87 S.D. 468, 210 N.W.2d 65 (1973); *Fonder v. City of Sioux Falls,* 76 S.D. 31, 71 N.W.2d 618 (1955); 10 E. McQuillin, *The Law of Municipal Corporations,* § 29.29 (1981).

This takes us to a gnawing, aching question of conscience. Should the City of Sioux Falls reap an equipment windfall? We must look at the pleadings to answer this question as well as some past precedent in this Court. When a pleader at law sets forth his complaint in a declaratory judgment action, what is he asking for? The pleadings must be scanned. A pleader may plead in law or in equity or both. A celebrated case in this Court, *Orr v. Kneip,* 287 N.W.2d 480, 485 (S.D.1979), instructs us: "It is generally recognized ... that declaratory judgment actions are neutral and may involve either equitable claims or legal claims or both. The court must look to the pleadings as a whole and the relief requested to determine the character of the claim." (Citations omitted.)

As one reviews the pleader's conceptualization in this case, no equitable relief is prayed for; thus, under this set of pleadings, the aching and gnawing must abate under stare decisis.

Restitution, as suggested by Justice Sabers' writing, is certainly not unheard of nor unprecedented in the law. *See* G. Douthwaite, *Attorney's Guide to Restitution,* § 10.11 (1977); McQuillin, *supra* §§ 29.127, 29.131. Again, the problem instantly is that no such plea for restitution was made below. As restitution is recognized under some circumstances, the statement in the majority opinion "[c]ontractors who do business with public entities do so at their peril" is very inflexible; there can be, as Paul Harvey informs us, "the rest of the story."

SABERS, Justice (concurring specially).

I concur in all respects except that I would remand to the trial court for the sole purpose of determining the circumstances under which Carr can return to the premises to remove the tank, pump, and related items, and restore the premises to original condition.

I would remand for that purpose even though this is a declaratory judgment action. A remand is justified because 1) as the trial court stated, "under equity principles the plaintiff is entitled to recover," 2) the tank, pump, and related items are

Carr's property and have not been paid for, 3) the problem was caused principally by City representatives, and 4) only a remand prevents unjust enrichment to the City.