1998 SD 44

**Merle HOITEN, Jr. and Merle Hoiten, d/b/a Hoiten Construction Company, Plaintiffs and Appellants,**

v.

**CITY OF CANISTOTA, a public corporation, Defendant and Appellee.**

No. 20141.

Supreme Court of South Dakota.

Considered on Briefs March 24, 1998.

Decided May 13, 1998.

David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for plaintiffs and appellants.

Timothy W. Bjorkman and Mike C. Fink of Bjorkman Law Office, Bridgewater, for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] Contractor sued city of Canistota (City) to recover money claimed to be due for services rendered at the city landfill. At the conclusion of the contractor's case during the trial to the court, City's motion for a directed verdict was granted based on the failure to comply with the competitive bidding requirements of the State of South Dakota. Contractor appeals, asserting there was a valid contract pursuant to an existing bid that was subsequently verbally modified. We affirm.

## FACTS

[¶ 2.] Merle Hoiten, Jr. (Hoiten) and his father are equal partners in Hoiten Construction Company (Hoiten Construction). Hoiten has been involved in the earth-moving business for over twenty years and has been a business partner with his father for fifteen years. In his business, Hoiten has performed work under contracts with municipalities and townships and has been involved in the bidding process for those contracts. He also admitted to knowing that those government contracts are required to be in writing under state law.

[¶ 3.] In 1993, the city council of Canistota accepted Hoiten Construction's bid of

$6,122.46 to complete an earth moving and leveling project at the city landfill. The project involved digging a hole, pushing debris into the hole, and covering the site with eighteen inches of dirt from the hole. Hoiten was familiar with the site because he had previously performed other similar work at the site. However, due to the extremely wet weather conditions, Hoiten and City agreed not to proceed with the project in 1993.

[¶ 4.] In 1994, Hoiten inspected the site to determine if the ground had dried out sufficiently to start the job. His inspection revealed there had been a significant amount of debris placed on the site after his original bid was accepted. Thereafter, Hoiten and City discussed the additional work that would now be involved in completing the project. After these discussions, City agreed to pay an additional $2,500 to Hoiten for the job, bringing the total contract to approximately $8,600.

[¶ 5.] Hoiten commenced work at the site on June 24, 1994. On June 27, Hoiten attempted to begin digging a hole at the dump site, but again the ground was too wet to dig properly. Hoiten then contacted the mayor of Canistota, since the project was impossible to complete as Hoiten had intended. The mayor directed him to see the city council member in charge of the landfill, Bill Nichols.

[¶ 6.] Hoiten and Nichols had a conversation about what should be done at the landfill in light of the wet conditions. The content of Hoiten's conversation with Nichols is a disputed matter, however. Hoiten's version of events was that he and Nichols discussed a plan to take dirt from an old railroad bed down the road and cover the dump site. Hoiten contends that, because it was impossible to gauge what it would cost to implement this new job plan, he and Nichols agreed on a rate of $80 an hour for each machine that Hoiten would use to accomplish the task. Hoiten claims that he asked Nichols if the rest of the city council would be required to vote on the new plan, but Nichols stated he was in charge of the landfill and that this new agreement did not need the approval of the rest of the council.

[¶ 7.] After work had begun on the new plan, Hoiten claims to have informed Nichols that the cost of the project was mounting.

Then Hoiten contends Nichols told him to continue the project and assured him that City would "float a loan" to take care of the costs, if needed.

[¶ 8.] Additionally, Hoiten claims that Nichols told him to put a twenty-four-inch overlay of dirt on the dump site, instead of the eighteen inches that was required by the original contract with City. Hoiten contends the increased amount of dirt overlay was to allay Nichols' concerns about compliance with state environmental regulations. This increase in the amount of dirt that was to cover the dump site was estimated to have taken an extra three to four days of work.

[¶ 9.] When Hoiten finished his work at the landfill, the cost of the project had risen to over $34,000. Nichols testified that he did not agree to an hourly rate for Hoiten's work, nor did he tell Hoiten to increase the dirt overlay to twenty-four inches. Nichols also denies telling Hoiten that he could incur expenses beyond the $8,600 originally agreed upon. Nichols did make a motion at a city council meeting that Hoiten's bill be paid in its entirety, but it failed for lack of a second. The city council has since refused to pay Hoiten Construction more than the $8,600 which they had previously approved. Additional facts will be noted when relevant.

[¶ 10.] Hoiten brought this action to recover the balance of the amount he contends is due. At the close of Hoiten's case-in-chief, the trial court granted City's motion for a directed verdict. The trial court held as a matter of law that the alleged amendment to the contract was null and void because it did not comply with South Dakota's competitive bidding laws, was not reduced to writing, and was not approved by a governing body at a duly assembled meeting.

[¶ 11.] Hoiten appeals the grant of the directed verdict, and raises the following issue for review:

> Whether Hoiten is foreclosed from being paid for services he provided to the city of Canistota because of alleged failures in complying with the competitive bidding requirements of the state of South Dakota?

## STANDARD OF REVIEW

[¶ 12.] This case was tried to the circuit court without a jury. Therefore, City's motion was in reality a motion for dismissal under SDCL 15–6–41(b), rather than a motion for directed verdict. *Sioux Valley Hosp. Ass'n v. Bon Homme County,* 331 N.W.2d 78, 78 (S.D.1983) (citing *Wefel v. Westin,* 329 N.W.2d 624 (S.D.1983)). SDCL 15–6–41(b) states, in pertinent part, as follows:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff.... [A] dismissal under this section ... operates as an adjudication upon the merits.

"Since the dismissal operates as an adjudication upon the merits, on appeal this court reviews the findings of fact under the 'clearly erroneous' standard." *Sioux Valley Hosp. Ass'n,* 331 N.W.2d at 78 (citation omitted). "This Court interprets statutes under a de novo standard of review without deference to the decision of the trial court." *In re Estate of Jetter,* 1997 SD 125, ¶ 10, 570 N.W.2d 26, 28 (citation omitted).

## DECISION

### Whether South Dakota statutory requirements foreclose Hoiten's right to payment.

[¶ 13.] Hoiten Construction's dealings with City are governed by SDCL ch 5–18 of the South Dakota Codified Laws. Prior to its amendment in 1995, SDCL 5–18–3 specified amounts "equal to or in excess of fifteen thousand dollars on ... public corporation projects" were subject to bid publication requirements. By reference, SDCL 5–18–2 makes these same contracts in amounts greater than $15,000 subject to competitive bidding requirements as follows:

All contracts of any public corporation, whether for the construction of public improvements or contracts for the purchase, lease or rental of materials, supplies or equipment, when such contracts involve an expenditure equal to or in excess of the amount provided for in § 5–18–3, must be let to the lowest responsible bidder....

Any contract in violation of SDCL ch 5–18 is "null and void and of no force and effect." SDCL 5–18–19.

[¶ 14.] In light of the exemption of contracts up to $15,000, the original landfill project agreement between City and Hoiten Construction for approximately $6,100 was not required to be submitted for bids. Similarly, the amended agreement, which was increased to $8,600 to take into consideration the increased amount of debris at the landfill, was still below the $15,000 statutory level and was not required to be submitted for bids. However, the oral amendment allowing for a rate of $80 an hour, per machine, that eventually amounted to a cost of over $34,000 fits squarely under the competitive bidding requirements of SDCL 5–18–2.

[¶ 15.] In *Robert L. Carr Co. v. City of Sioux Falls,* 416 N.W.2d 602 (S.D.1987), this Court dealt with a situation similar to the one at hand. In *Carr,* the contractor had been the successful bidder on a $12,500,000 wastewater treatment facility for the city. Later, the city determined that diesel storage tanks were also needed at the site and asked the contractor for a quote on the additional cost for installation of the tanks. The contractor offered to do the installation for $10,225, which was accepted by the city. However, after the tanks were installed, the city finance officer determined that the city could not legally pay for the additional installation costs without violating SDCL 5–18–2, which at that time required bidding on public improvements when the amount of the contract equaled or exceeded $3,500. *Id.* at 602–03. The circuit court agreed with the city. *Id.*

[¶ 16.] On appeal, this Court upheld the lower court's determination that the contract could not be enforced, based on the failure to comply with the state's competitive bidding requirements, stating: "It is unlawful for a public corporation to enter into a contract in

violation of SDCL 5–18–2 *et seq.* and, if entered into, such contract is null and void and of no force and effect." *Id.* (citing SDCL 5–18–19).

[¶ 17.] Another very similar case with a like result is *Sioux Falls Taxpayers Ass'n v. City of Sioux Falls*, 69 S.D. 93, 7 N.W.2d 136 (1943). In that case, the contractor originally was working on a project that entailed sandblasting water tanks. *Id.* at 94, 7 N.W.2d at 137. When deterioration of the tanks was discovered, the city water superintendent and the city water commissioner agreed to hire the contractor to repair the tanks at an hourly rate. When finished, the bills for the repair project totaled $26,653.62. This Court noted that the laws in effect at that time required competitive bidding on contracts for more than $500. *Id.* at 98, 7 N.W.2d at 139. Finally, this Court held that any contract which violated the competitive bidding requirements was null and void under the South Dakota statutory scheme that existed at that time. *Id.* at 100, 7 N.W.2d at 140.

[¶ 18.] Possibly even stronger authority for the requirement that the competitive bidding laws be strictly enforced is found in *Bak v. Jones County*, 87 S.D. 468, 210 N.W.2d 65 (1973). In *Bak*, one county commissioner asked a contractor to repair certain damaged roads. *Id.* at 470, 210 N.W.2d at 66. Other county commissioners even knew about this oral agreement. The contractor performed the work and submitted a bill for $17,925, which was rejected by the county because the requirements of the competitive bidding laws were not met.

[¶ 19.] The contractor appealed to this Court, which held that the oral contract between the contractor and the county was invalid, rejecting even a claim in quantum meruit. *Id.* at 475, 210 N.W.2d at 69. This Court found the reasoning expressed previously by the Iowa Supreme Court persuasive.

'In view of the reasons underlying public policy as applied to contracts of municipal corporations, to which reference has heretofore been made, it would, in our opinion, be contrary to public policy to allow one to thus evade provisions which have been enacted by law for the protection of the public, to foist upon the municipality materials and services that could not be returned, and then, when the evasion has been discovered and the contracts declared invalid, to recover on the theory that the municipality has received a benefit for which it should pay.... If a recovery be allowed under the facts of this case, we see no reason why contractors will not be encouraged to enter into contracts with municipal corporations which they realize are of very doubtful validity.'

*Id.* (quoting *Horrabin Paving Co. v. City of Creston*, 221 Iowa 1237, 262 N.W. 480 (1935)). Thus, precedent makes clear that Hoiten faces an uphill battle, contending with not only statutory competitive bidding requirements, but also with public policy concerns regarding attempts to circumvent the statutory requirements through appeals to equity.

[¶ 20.] However, Hoiten contends that SDCL 5–18–18.3 provides an exemption in this case from the competitive bidding requirements that otherwise would apply. This statute provides as follows:

Any amendment or change order to an existing construction contract need not be bid if the contract contains unit prices for the same type or class of work, or the change or extra work is necessitated by circumstances not reasonably foreseeable at the time the underlying contract was let and the change or extra work is necessary to the completion of the project.

[¶ 21.] In parsing the statute, it is readily apparent that Hoiten's original contract with City was not on a unit-price basis, so the exception in cases like that is inapplicable. Even were we to assume that the project fit under the exception of SDCL 5–18–18.3, and need not have been submitted to bids, there is yet another hurdle that Hoiten's case stumbles on. While SDCL 5–18–18.3 provides exemption from the bidding process requirements, it does not shelter Hoiten's alleged contract from municipal contract requirements. SDCL 9–1–5 requires as follows: "Contracts of a municipality shall not be valid unless authorized by a vote of the governing body at a duly assembled meeting thereof." Since it is undisputed that

the rest of the city council did not even know about Hoiten's alleged oral contract with Nichols, much less authorize it at a city council meeting, the alleged contract is invalid. SDCL 9-1-5.

[¶ 22.] Hoiten contends that *Stroh v. Town of Java*, 463 N.W.2d 923 (S.D.1990), allows for implied ratification of certain actions by the city. However, *Stroh* is entirely inapplicable to the facts of this case, because there is no evidence of ratification in this case. Only city council member Nichols was willing to have City pay Hoiten's bill.

[¶ 23.] The opinion in *Carr* sums up well this Court's decisions in these types of cases:

Although it is a harsh rule, and we can sympathize with [the contractor's] predicament, we are compelled to adhere to statutory and caselaw directives. Contractors who do business with public entities do so at their peril. They are charged with the duty to be familiar with the statutory requirements and to adhere to them.

416 N.W.2d at 604. Based on settled law, we affirm the decision of the trial court.

[¶ 24.] MILLER, C.J., and SABERS, KONENKAMP, and GILBERTSON, JJ., concur.