2001 SD 150

**Thomas BOZIED, Plaintiff and Appellee,**

v.

**CITY OF BROOKINGS, South Dakota, a Municipal Corporation, Defendant and Appellant,**

and

**Mills Construction, Inc., a South Dakota Corporation, Intervenor and Appellant.**

**Nos. 21299, 21313.**

Supreme Court of South Dakota.

Argued Sept. 20, 2000.

Reassigned Feb. 26, 2001.

Reassigned July 13, 2001.

Decided Dec. 26, 2001.

---

Terry D. Wieczorek, Brookings, Attorney for plaintiff and appellee.

Sandra Hoglund of Davenport, Evans, Hurwitz & Smith, Sioux Falls, Attorneys for defendant and appellant.

William G. Taylor and James E. Moore of Woods, Fuller, Shultz & Smith, Sioux Falls, Attorneys for intervenor and appellant.

Mark Barnett, Attorney General, Jeffrey P. Hallem, Assistant Attorney General, Pierre, Attorneys for amicus curiae state.

KONENKAMP, Justice (on reassignment).

[¶ 1.] This is a taxpayer challenge to the legality of certain change orders executed by the City of Brookings on its Agri–Plex project. The circuit court granted summary judgment to the taxpayer, ruling that the change orders were void for violating statutory competitive bidding requirements. The court ordered the contractor to refund all amounts paid on the invalid change orders, resulting in a forfeiture of $548,001. We conclude that whether the change orders were void depends on whether they were "necessitated by circumstances not reasonably foreseeable at the time the underlying contract was let"

and were "necessary to the completion of the project" under SDCL 5–18–18.3. These are questions of fact. Despite pleas to reexamine our longstanding rule, we adhere to the principle that equitable remedies and defenses are unavailable when public contracts are declared void. However, if the change orders are found to violate SDCL 5–18–18.3, we hold that in the absence of fraud, collusion, or undue influence, consistent with the precept that parties to a void contract must be left where they are found, the contractor may still retain those funds previously received on the two change orders. We affirm in part, reverse in part, and remand for trial.

## A.

### Background

[¶2.] In August 1997, the City of Brookings devised plans to build the Brookings Agri–Plex. It was to consist of an exhibition structure with an attached building for county offices and a separate agricultural research building. To fulfill this plan, business leaders and community officials formed various project committees. John Mills, owner of Mills Construction, Inc., chaired the designing and planning committee. This committee was responsible for estimating the approximate cost of the project and developing a project package to fit within the proposed budget. Brookings then advertised for bids.

[¶3.] Several bids were submitted, including one from Mills Construction. John Mills resigned from the planning committee when his company submitted its bid. As the Mills bid was $635,000 lower than the next lowest bid, Brookings awarded Mills the construction contract in September 1997. The contract called for the south parking lot to be graveled. For the research building, only 5,000 square feet would be finished. The contract called for no other improvements to the remaining 25,000 square feet. Project planners were actively searching for long-term tenants and anticipated that interior improvements would eventually be needed to accommodate these tenants. Planners also expected that the south parking lot would be paved when funds became available.

[¶4.] After the contract was awarded and the construction began, Brookings issued a series of twelve change orders. Change order #1, dated October 22, 1997, stated, "YOU ARE DIRECTED TO MAKE THE FOLLOWING CHANGES IN THE CONTRACT." Issued by the architect, it instructed Mills to pave the south parking lot at an increased cost of $107,000.[1] The other change order in question here, #12, was issued on July 17, 1998. This one directed $441,000 of tenant improvements for the unfinished section of the research building because Brookings had secured two tenants for the building. Neither change was advertised for bid. Mills and Brookings signed the change order forms, agreeing to the contract changes.

[¶5.] Both John Mills and his project manager, Scott Lardy, inquired about the propriety of accomplishing these improvements by change order. City attorney Alan Glover, whose law partner, Eric Rasmussen, represented Mills, opined that a negotiated change order, without public bidding, was permissible since the changes were precipitated by unforeseen circumstances necessary to the completion of the project. In a later affidavit, Lardy stated that Mills Construction relied on Glover's

---

1. According to evidence elicited in the summary judgment hearing, Brookings decided to pave the parking lot when more funds became available because the Mills Construction bid was lower than anticipated.

opinion. John Mills also wrote the Agri–Plex Board inquiring whether the tenant improvements would be accomplished "by [c]hange [o]rder, by separately negotiated contract, or separate bid." Bozied, a taxpayer and local businessperson, publicly questioned the legality of the last change order because it had not been submitted for public bidding.

[¶ 6.] In an audit report dated October 16, 1998, the State Auditor concluded that the change orders were unlawful. Bozied then sought to enjoin Brookings from paying Mills until a judicial determination regarding the legality of the change orders could be obtained. In response, the City adopted Ordinance 25–98, allowing Brookings to proceed even if the change orders were later judicially declared unlawful and void under SDCL 5–18–19. Noting that most of the contract money had already been expended, the circuit court denied Bozied's motion for a preliminary injunction in a letter decision dated December 23, 1998. The parties then moved for summary judgment. Following a hearing, the court granted summary judgment to Bozied.

[¶ 7.] The court ruled as a matter of law that the major portion of change order # 1 and all of change order # 12 violated SDCL ch. 5–18. It also concluded that Brookings City Ordinance 25–98 was invalid, as a violation of the South Dakota Constitution and established law. The court held that the defense of equitable estoppel was unavailable to Mills and ordered the company to refund amounts paid under the two unlawful change orders. Lastly, the court awarded Bozied $21,018.64 in attorney fees and expenses. Mills and Brookings appeal.

## B.

### Summary Judgment Standard

[¶ 8.] Under our familiar standard for reviewing summary judgments, we decide only whether genuine issues of material fact existed and whether the law was correctly applied. *Harms v. Northland Ford Dealers*, 1999 SD 143, ¶ 8, 602 N.W.2d 58, 61. Summary judgment is not the proper method to dispose of factual questions. *Harn v. Continental Lumber Co.*, 506 N.W.2d 91, 94 (S.D.1993). Only when fact questions are undisputed will issues become questions of law for the court. *Id.* We will affirm the trial court's decision if we find any legal basis to support it. *De Smet Ins. Co. of South Dakota v. Gibson*, 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99; SDCL 15–6–56(c). Statutory and contract interpretation are questions of law reviewed de novo. *State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 N.W.2d 273, 275 (S.D.1994). The existence of a legal duty is also a question of law. *Poelstra v. Basin Elec. Power Coop.*, 1996 SD 36, ¶ 9, 545 N.W.2d 823, 825.

## C.

### City Ordinance—Home Rule

[7–10] [¶ 9.] After Bozied sought to enjoin work on the change orders, the Brookings City Council passed Ordinance 25–98. In relevant part, the ordinance provides:

A. That in the event a contract, or any part thereof, is declared void pursuant to the provisions of SDCL 5–18–19 in a court of competent jurisdiction and there is no finding of fraud, corruption, collusion, or graft on the part of the contracting parties, then payment under said contract shall be made in the following manner, to-wit

1. If the terms of the contract were otherwise complied with, then the amount originally agreed to be paid shall be paid so long as it is deemed to be reasonable under

the circumstances, and the City has received fair value for the services rendered.

2. In the event the conditions described in paragraph 1 above are not established, then the amount paid shall be derived on the equitable basis of quantum meruit.

3. In the event there is found to be fraud, collusion, corruption or graft, on the part of the contracting parties, in addition to any other civil or criminal penalties, no payments shall be made to the contractor and any payments previously made shall be recouped from the contractor.

B. The remedies set forth herein shall not be applicable if an action for preliminary and permanent injunction is initiated in a court of competent jurisdiction, seeking to enjoin performance of the alleged unlawful contract within ten (10) days following publication of the City's approval of said contract.

[¶ 10.] This ordinance, in sum, allows the City to honor void contracts, overriding SDCL 5–18–19. The City believes it is empowered to enact such an ordinance because it holds a home rule charter, authorized by the South Dakota Constitution in Article IX § 2. This provision states in part:

A chartered governmental unit may exercise any legislative power or perform any function not denied by its charter, the Constitution or the general laws of the state. The charter may provide for any form of executive, legislative and administrative structure which shall be of superior authority to statute, provided that the legislative body so established be chosen by popular election and that the administrative proceedings be subject to judicial review.

Powers and functions of home rule units shall be construed liberally.

[¶ 11.] Although the power granted to home rule cities may be great, it is not absolute. The South Dakota Legislature limited home rule powers when it enacted SDCL 6–12–5:

Neither charter nor ordinances adopted thereunder may set standards and requirements which are lower or less stringent than those imposed by state law, but they may set standards and requirements which are higher or more stringent than those imposed by state law, unless a state law provides otherwise.

The City's ordinance is less stringent than state law. Under South Dakota law, parties cannot be paid under void contracts. Not even the Legislature can enact statutes allowing such payments. The South Dakota Constitution Article XII § 3 provides:

The Legislature shall never grant any extra compensation to any public officer, employee, agent or contractor after the services shall have been rendered or the contract entered into, *nor authorize the payment of any claims or part thereof created against the state, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void;* nor shall the compensation of any public officer be increased or diminished during his term of office: provided, however, that the Legislature may make appropriations for expenditures incurred in suppressing insurrection or repelling invasion. (Emphasis added.)

[¶ 12.] South Dakota courts have consistently held that void public contracts cannot be later cured or ratified. *Norbeck & Nicholson Co. v. State*, 33 S.D. 21, 144 N.W. 658, 659 (1913) (Norbeck II). Legis-

lation may not retroactively validate what it cannot originally authorize. Even if the ordinance could be deemed valid, the questioned change orders would not fall under this ordinance, but would be governed by the law in effect at the time the change orders were issued. "The validity of a municipal contract is to be determined by the laws in force at the time the agreement was made." McQuillan, Municipal Corporations § 29.118 (3d ed. 1999).

### D.

### "Circumstances Not Reasonably Foreseeable"

[¶ 13.] Mills argues that it was legitimate to accomplish the paving and tenant improvements by change order instead of advertising for bids. The question is governed by SDCL 5–18–18.3:

> Any amendment or change order to an existing construction contract need not be bid if the contract contains unit prices for the same type or class of work, or the change or extra work is necessitated by circumstances not reasonably foreseeable at the time the underlying contract was let and the change or extra work is necessary to the completion of the project. (Emphasis added).[2]

Mills contends that the language "reasonably foreseeable" raises a factual question to be resolved by a jury, not by a court on summary judgment.[3] "Competitive bidding provisions must be read in light of the reason for their enactment, or they will be applied to where they were not intended to operate and thus deny municipalities au-

thority to deal with problems in a sensible, practical way." 10 McQuillin, Municipal Corporations (3rd rev. ed. 1990) § 29.29 p. 375, fns. omitted. Certainly, requiring new bidding to finish a project rather than keeping with the present contractor may incur additional set up costs and thus result in added expense.

[¶ 14.] In most instances, foreseeability is a question of fact. *E.P. v. Riley*, 1999 SD 163, ¶ 33, 604 N.W.2d 7, 16. Foreseeability is determined under the "totality of the circumstances." *Small v. McKennan Hosp.*, 403 N.W.2d 410, 413 (S.D.1987) (Small I). According to SDCL 5–18–18.3, two factual determinations must be made: (1) whether "the change or extra work is . . . . not reasonably foreseeable," and (2) whether "the change or work is necessary to the completion of the project."[4] Mills argues that the work authorized under the two change orders was unforeseeable because obtaining tenants at such an early date was unexpected. And because of the early arrival of unexpected tenants, the additional work inside the building and the paving of the parking lot were unforeseen. For summary judgment purposes, we must view the facts in a light favorable to the nonmoving party. SDCL 15–6–56(c). Under the totality of circumstances, we conclude that the fact finder must decide whether such events were not reasonably foreseeable.

[¶ 15.] Likewise, the fact finder must decide whether the improvements were "necessary" to complete the project. Mills argues that to accommodate the newly arrived tenants, it was necessary to pave the parking lot and conform the office space to

---

2. This statute was amended in 2001, but we apply the pre-amendment version.

3. The record does not reflect that any party asked for a jury trial. SDCL 15–6–38(b) and (d). Thus, as the record now stands, the trier of fact would be the circuit court.

4. The contract did not contain unit prices; therefore, that portion of SDCL 5–18–18.3 is inapplicable.

suit the tenants. Without this, Mills asserts, Brookings would not have been able to fulfill its contractual duty to its new tenants under the lease because the property had to be built to suit the tenants' businesses. These are disputed facts. After all, the City's attorney opined that the changes were unforeseen and the State Auditor concluded just the opposite. The fact finder must hear the rationales behind these varying conclusions and only then determine the question. Therefore, summary judgment was improper. We reverse on this issue and remand for trial.

## E.

### Void Contracts—Remedies

[¶ 16.] This brings us to the crux of our case, to what Justice Henderson once called that "gnawing, aching question of conscience." *Carr Co. v. City of Sioux Falls*, 416 N.W.2d 602, 604 (S.D.1987) (Henderson, J., concurring specially). The circuit court concluded that, in accordance with our precedent, equitable remedies were unavailable to Mills because the change orders were void. Since we are remanding this matter for fact determinations, this question may arise again if the fact finder rules that the change orders were not "necessitated by circumstances not reasonably foreseeable" and not "necessary to the completion of the project." SDCL 5–18–18.3.

[¶ 17.] This Court has held that "under the proper circumstances" taxpayers may institute actions on behalf of themselves and other taxpayers to recover funds paid to a contractor under a void or illegal contract. *Sioux Falls Taxpayers Ass'n v. City of Sioux Falls*, 69 S.D. 93, 7 N.W.2d 136, 140 (1943).[5] Though the issue in *Sioux Falls Taxpayers* was not before the Court, it recognized that the trial court in that case allowed the contractor "to retain what it thought was a reasonable value of the materials furnished, and the work and labor performed." *Id.* at 141. Consequently, there was not a complete forfeiture in *Sioux Falls Taxpayers*.

[¶ 18.] Bozied seeks to recover money the contractor previously received. As the circuit court recognized when it denied Bozied's motion for a preliminary injunction, "most of the moneys have already been expended." Imposing a forfeiture of over a half-million dollars on a contractor is a harsh and perhaps devastating consequence. In denying any relief to contractors in cases of this sort, we have held steadfastly to the notion that "[c]ontractors who do business with public entities do so at their peril. They are charged with the duty to be familiar with the statutory requirements and to adhere to them." *Carr*, 416 N.W.2d at 604. Government integrity and public protection warrant this inflexible rule. The rule enjoys the virtues of simplicity and rectitude, but unfortunately, it suffers the vices of rigidity and injustice. Today, we reexamine this court-fashioned rule. In the end, we conclude that the rule should prevail; however, it should apply to both sides of a void public contract.

[¶ 19.] Typically, when a contract is within a city's power to enter, but the contract is later declared void for violating some statutory requirement, a contractor who performs in good faith will end up suffering all the adverse consequences, while the public entity unjustly receives all the benefits from the contractor's perfor-

---

**5.** In *Sioux Falls Taxpayers,* the Sioux Falls Water Commissioner permitted a contractor to engage in certain repairs, which exceeded the amount provided in the competitive bidding law. *Id.* at 94–95, 7 N.W.2d 136. The Water Commissioner did so without discussing the repairs with any members of the Commission and without its approval.

mance.[6] Judges have long struggled with this question. Some courts take the position that no matter how innocent a contractor may be, there can be no recovery on a void contract, even to right a gross injustice. That has been our rule, and we continue to adhere to it. However, a contrary result may be warranted where a contractor has already been paid and a taxpayer seeks to recover the payment on behalf of a government entity.

[¶ 20.] Several courts faced with this situation have allowed a contractor to retain funds already paid but not to recover additional funds. *Elview Construction Co., Inc. v. North Scott Comm. School Dist.,* 373 N.W.2d 138, 144 (Iowa 1985); *Gamewell Co. v. City of Phoenix,* 216 F.2d 928, 941 (9th Cir.1955); *Tobin v. Town Council of Sundance,* 45 Wyo. 219, 17 P.2d 666, 676 (1933); *Village of Pillager, Cass County v. Hewitt,* 98 Minn. 265, 107 N.W. 815, 816 (1906). *See generally* 33 ALR3d 397 (1970). This rule has been applied absent a showing of "haste, fraud, undue influence, or collusion, in the making of the payment." *Tobin,* 17 P.2d at 674. These jurisdictions recognize the same principle promoted in many of our decisions and most memorably in the case of *Norbeck & Nicholson Co. v. State,* 32 S.D. 189, 142 N.W. 847 (1913) (Norbeck I). There, our Court recited what has now become a familiar refrain: the law leaves parties to illegal contracts where it finds them and gives them no assistance in extricating themselves from the situation in which they have placed themselves--no recovery can be had on an express or implied contract or on quantum meruit. *Norbeck I,* 142 N.W. at 849. Requiring Mills to pay a refund contravenes this precept. It places the City and the taxpayers in a far better position than they were before the contract: the City of Brookings has its new Agri–Plex structure but would receive a refund for its improvements.[7] *See Elview,* 373 N.W.2d at 143 (citing *Miller v. City of Des Moines,* 143 Iowa 409, 122 N.W. 226 (1909)); *see also Hewitt,* 107 N.W. at 816.

[¶ 21.] This principle of leaving the parties where they stand is well illustrated in the case of *Ellefson v. Smith,* 182 Wis. 398, 196 N.W. 834 (1924). That case was a taxpayer suit to recover from a builder the amount paid on a contract for the construction of a reservoir. The contract was let without competitive bidding. The court affirmed judgment for the builder upon proof that the City had the power to enter the contract: the reservoir was a public necessity; the contract was for a fair price; city officials believed the welfare of the City would best be served by letting the contract without waiting for bids; and the work was done in full public view. In denying recovery against the contractor, the court said that equity does not exist to inflict punishment. *See also Tobin,* 45 Wyo. 219, 17 P.2d 666 (city could not recover money paid to contractor on invalid contract absent haste, fraud, undue influence, or collusion). *But see D'Angelo v.*

**6.** Many courts recognize two types of ultra vires contracts: (1) contracts ultra vires in the absolute sense because a government authority had no power at all to enter into them; and (2) contracts that a government authority was empowered to enter, but failed to execute in a lawful manner. *See, e.g., Edwards v. City of Renton,* 67 Wash.2d 598, 409 P.2d 153 (1965). When a public contract is ultra vires in the absolute sense, no equitable principle will extricate a contractor. *Earthmovers of Fair-*

*banks, Inc. v. Department of Transp. & Pub. Facilities,* 765 P.2d 1360, 1368 (Alaska 1988).

**7.** The court in *Elview* noted: "[b]y allowing the recovery back of payments made to a contractor, the court is asked to take affirmative action and through the court's action, one party, [the City] would be allowed to receive both the benefits of performance and the money." *Id.* at 144.

*Cole,* 67 N.Y.2d 65, 499 N.Y.S.2d 900, 490 N.E.2d 819 (1986), 67 N.Y.2d 65, 499 N.Y.S.2d 900, 490 N.E.2d 819 (municipality was excused from any payment under void contract but could still recover any money already paid); *Lincoln v. Thompson,* 190 Ill.App. 536 (1914) (money expended recoverable as contract was absolutely ultra vires). *But also see Losee v. Hettich,* 74 S.D. 461, 54 N.W.2d 353 (1952) (violation of competitive bidding laws ultra vires as breaching statute).

[¶ 22.] Leaving the parties as we find them is consistent with our longstanding jurisprudence. In *Hoiten v. City of Canistota,* 1998 SD 44, 579 N.W.2d 12, the contractor sued to recover for services performed on a contract not in compliance with competitive bidding requirements.[8] We refused to enforce the contract and thus left the parties where we found them. Likewise, in *Bak v. Jones County,* 87 S.D. 468, 210 N.W.2d 65 (1973), we cited an Iowa case, *Horrabin Paving Co. v. City of Creston,* 221 Iowa 1237, 262 N.W. 480 (1935), for the rule that a contractor cannot recover against a municipality on an invalid contract. Here we have the inverse situation. Just as a contractor cannot recover on an invalid contract against a city, so too a city, or one acting on its behalf, cannot recover money it paid on such a contract. *See Tobin,* 17 P.2d at 674 (contract invalid for both parties). To hold otherwise under these facts, we would rescue the City and punish the contractor when both violated the law.

[¶ 23.] A contractor who fully performs a contract of this character and then receives payment should not be compelled to refund the money. *See Tobin,* 17 P.2d at 674. Such a conclusion, will by necessity, be tempered by the facts of each case. However, where there is no showing that the amount paid was unreasonable, and the invalidity of the contract results, at least in part, from the City's own actions, repayment should not be ordered. *Elview,* 373 N.W.2d at 143 (citing *Miller,* 122 N.W. at 232 (Iowa 1909)). If, however, the evidence shows fraud, undue influence, or collusion, then a different result would be required.

[¶ 24.] This Court has emphasized on numerous occasions that the law "abhors a forfeiture." *BankWest v. Groseclose,* 535 N.W.2d 860, 864 (S.D.1995)(citing *Ford v. Hofer,* 79 S.D. 257, 261, 111 N.W.2d 214, 216 (1961)); *Wandler v. Lewis,* 1997 SD 98, ¶ 26, 567 N.W.2d 377, 383. "Forfeitures are considered odious in the law and are not favored by the courts." *BankWest,* 535 N.W.2d at 864 (citations omitted). In the absence of collusion, fraud, or other impropriety, we cannot condone a forfeiture of $548,001.

[¶ 25.] To say that the taxpayers here are the ones truly aggrieved is to embrace a pious fable. The City was lawfully going to incur this expense or something close to it in any event. That had already been decided. Another contractor would have completed the improvements at issue had Mills not finished the job. In the end, what loss would the taxpayers have suf-

---

**8.** South Dakota cases dealing with violations of the competitive bidding laws have primarily been actions by contractors. *See Hoiten,* 1998 SD 44, ¶ 10, 579 N.W.2d at 14 (contractor sued to recover balance due); *Bak,* 87 S.D. 468, 210 N.W.2d 65, 66 (1973)(contractor suit for work done); *Robert L. Carr Co. v. City of Sioux Falls,* 416 N.W.2d 602 (S.D.1987)(contractor action for declaratory judgment to determine city's liability); *Northern Hills Sanitation, Inc. v. Board of Comm'rs of City of Lead,* 272 N.W.2d 835, 836 (S.D. 1978). *Compare Fonder v. City of Sioux Falls,* 76 S.D. 31, 71 N.W.2d 618 (1955)(taxpayer suit to enjoin city from further expenditures); *Sioux Falls Taxpayers,* 7 N.W.2d at 137–38 (included taxpayer claim to recover monies already expended).

fered? By forcing Mills to repay the City, we excuse the City from an expense it was going to incur anyway. Why should the taxpayers obtain free what otherwise would have required a substantial expenditure?

[¶ 26.] On the other hand, whether these change orders were occasioned by fraud, undue influence, or collusion remains to be decided in trial. Bozied suggests impropriety in the contractual relationship between the City and Mills:

> Mills chaired the local committee charged with designing the project, [allowing him] a distinct advantage over all other potential contractors. . . . Mills and the City were represented by the same Brookings law firm. After Bozied brought this lawsuit to correct the wrongdoing, the same Brookings law firm drafted a new city ordinance to evade and circumvent the competitive bidding laws and protect its client, Mills.

These are serious charges, especially the ones against the law firm in purportedly advising both sides in this controversy. But these are still only allegations, not proofs. They are for the fact finder to resolve.

[¶ 27.] The circuit court awarded Bozied attorney's fees and expenses citing SDCL 15–17–45. This statute allows reimbursement in a taxpayer action to recover funds misappropriated by a governing body or public official, "in the event of a recovery by [the] plaintiff." Because we reverse the circuit court's monetary judgment, we also reverse the award of attorney's fees.

## F.

### Conclusion

[¶ 28.] We affirm the circuit court's ruling that Brookings City Ordinance 25–98 was unconstitutional and invalid. We also affirm the court's decision that equitable remedies are unavailable when a public contract is void for violating statutory competitive bidding requirements. However, whether the change orders violated SDCL 5–18–18.3 is a question of fact. We reverse summary judgment for Bozied on that issue. In the event the change orders are found to violate this statute, the contractor may nonetheless retain all payments received in the absence of proof of fraud, collusion, or undue influence. If the statute was not violated, then of course the contractor is entitled to any unpaid amounts, subject to the terms of the contract.

[¶ 29.] Affirmed in part, reversed in part, and remanded for trial.

[¶ 30.] GILBERTSON, Chief Justice, AMUNDSON, Justice, and MILLER, Retired Chief Justice, concur.

[¶ 31.] VON WALD, Circuit Judge, sitting for SABERS, Justice, disqualified, dissents.

VON WALD, Circuit Judge (dissenting).

[¶ 32.] I respectfully dissent from the majority's holding on its decision to remand for a trial on the issue of foreseeability (section D), and on the holding regarding remedies under a void contract (Section E). I agree with and concur on the majority's holding regarding the unconstitutionality of the city ordinance (section C). I address only sections D and E.

### Circumstances Not Reasonably Foreseeable

[¶ 33.] **Did the trial court err in holding the use of change orders violated SDCL 5–18–18.3?**

[¶ 34.] This Court's review of summary judgments is indeed familiar. Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c).

[¶ 35.] In this case, after both sides had conducted their written discovery, each side made separate motions for summary judgment. A hearing was held on these motions. At the conclusion of the hearing, Mills asked for leave of court to amend its answer to include the issue of equitable estoppel, which the court granted. The memorandum decision entered by the court included the issue of equitable estoppel.

[¶ 36.] The issue of "foreseeability" is the only fact Mills claims is disputed. While generally "foreseeability" is a fact question, I believe that under the record of this case that "foreseeability" is clearly a matter of law for the court to determine. It can be determined by considering the evidence in the record in light of the statute and the contract between the parties; the construction of the statute and the contract are questions of law that may be determined by a court on summary judgment. *See Auto–Owners Ins. Co. v. Hansen Hous. Inc.*, 2000 SD 13, ¶ 10, 604 N.W.2d 504, 509; *see also Ward v. Midcom, Inc.*, 1998 SD 10, ¶ 9, 575 N.W.2d 233, 236.

[¶ 37.] SDCL 5-18-18.3 then provided: Any amendment or change order to an existing construction contract need not be bid if ... the change or extra work is *necessitated* by circumstances not reasonably foreseeable at the time the un-derlying contract was let and the change or extra work is *necessary* to the completion of the project.

(emphasis added). The circuit court focused on this statute when deciding whether the change orders should have been let out for bids. Mills contends SDCL 5-18-18.3 should be interpreted to include unexpected opportunities and not just unexpected difficulties. That argument is antithetical to the plain meaning of the statute. This statute's parameters for change orders are clear and unambiguous.

[¶ 38.] City and Mills argue an exception should be made for "unexpected opportunities" that may arise. City contends that because the project bid from Mills came in far below projected cost, City should be able to use the money not spent on the initial bid to enhance the project by change orders. The enhancements included paving the south parking lot (change order # 1) and making tenant improvements (change order # 12). Neither of these changes were "necessary" to the completion of the project that was let out on bid.

[¶ 39.] The term "necessary" does not equate with the term "opportunity." The statute makes an exemption provision for necessary items, but specifically provides in SDCL 5-18-3 for changes to the project that may be defined as opportunities.[9] An opportunity is not, by definition, necessary to the completion of the project. If the planners wanted to make provisions for expected (or unexpected) opportunities, they could have let alternate bids for the project. If City and Mills knew that these changes were going to be made at some

---

9. SDCL 5-18-3 provided in 1997: "If the governing body of any public corporation intends to enter into a contract for the construction of a public improvement which involves the expenditure of twenty-five thousand dollars or more or a contract for the purchase of materials, supplies, or equipment which involves the expenditure of fifteen thousand dollars or more, the governing body of the public corporation shall advertise for bids for the project...."

point in the future, they were not unexpected and were reasonably foreseeable at the time the underlying contract was let.

[¶ 40.] Mills testified by affidavit to the fact that the changes were foreseeable to the project planners and architects. It stated that "[a]s initially conceived, the research building was intended to house tenants, and the south parking lot was intended to be paved." These two changes were not part of the project that was let out for bid. Yet, they were foreseeable changes that would be made in the future. Neither change was necessary to the completion of the project.

[¶ 41.] It also is not unforeseeable that a bid might come in lower than anticipated. The anticipated cost of the Agri-plex building was based upon the average cost of similar projects. This average cost means that some cost estimates will be higher and others will be lower. It is clearly foreseen and anticipated that a bid may come in that is below the average or anticipated cost.

[¶ 42.] "It is settled law in South Dakota that a party to a lawsuit cannot claim the benefit of a version of relevant facts more favorable to his own contentions than he has given in his own testimony." *Connelly v. Sherwood*, 268 N.W.2d 140, 141 (S.D.1978). In this case, Mills is held to its testimony that the planners and architects for City foresaw the building finished for tenants and the south parking lot paved. The work described in the contested change orders was not unforeseen as a matter of law.

[¶ 43.] It was undisputed at the time of the hearing on the motion for summary judgment, that these change orders were foreseeable at the time of the project issuance, not necessary to the project's completion, and involved an expense above twenty-five thousand dollars. SDCL 5–18–18.3. These change orders are in direct violation of SDCL 5–18–19 [10] and were correctly deemed void and of no force and effect. *Hoiten v. City of Canistota*, 1998 SD 44, ¶ 13, 579 N.W.2d 12.

### Void Contracts—Remedies

[¶ 44.] **Did the trial court err in rejecting the defense of equitable estoppel?**

[¶ 45.] The circuit court concluded that equitable remedies, in particular the defense of equitable estoppel, was unavailable to Mills because the change orders were void. This decision follows a long line of jurisprudence from this court. *See Norbeck & Nicholson Co. v. State*, 32 S.D. 189, 142 N.W. 847, 849 (1913) (court denying recovery on theory of quantum meruit due to contract being void and illegal); *Carlson v. City of Faith*, 75 S.D. 432, 67 N.W.2d 149, 151 (1954) ("[E]quity and the rules of natural justice cannot be applied to 'interfere in the enforcement of a positive statute enacted for the protection of the public in the safeguarding of public funds.' "); *Simpson v. Tobin*, 367 N.W.2d 757 (S.D.1985) (court denying equitable defenses of laches, estoppel and quantum meruit due to void contract).

[¶ 46.] The majority has determined that the denial of equitable remedies now applies to both sides of a void public contract; that when a contract is determined to be void, the court leaves the parties as they find them. The majority reconciles the past decisions with this one by reasoning that never before has a contractor completely forfeited the entire price of the changes ordered. Also noted is the fact

---

**10.** SDCL 5–18–19 provides: "It shall be unlawful for any public corporation or its officers to enter into any contract in violation of the terms of this chapter or chapter 5–21, and any such contract entered into shall be null and void and of no force and effect."

that Mills was "ordered" by the City to make these changes, and that City can not now gain a benefit from that order; that City's hands are not clean.

[¶ 47.] This Court previously ruled that because the contract entered into is against public policy and in violation of law, City must be permitted to recover into the public treasury funds paid out to the contractor. *See Sioux Falls Taxpayers Ass'n v. City of Sioux Falls*, 69 S.D. 93, 7 N.W.2d 136, 140 (1942) (where a contract was null and void for failure to follow the proper bidding laws, city had no authority to enter into contract or pay contractor). The general rule of illegal contracts is stated succinctly in *Norbeck and Nicholson Co.*, 32 S.D. 189, 142 N.W. 847. The majority cites the passage which says that "the law leaves the parties to illegal contracts where it finds them...." Exceptions to this rule must be pointed out as well. "[An] exception is where the parties are not in pari delicto, in which case the party not participating in the wrong may recover his consideration but not the other party." *Id.* at 849. In this case Bozied brings this action on behalf of the taxpayers of the City of Brookings as authorized by this Court since 1896 as an exception to the "real party in interest" rule. *Stumes v. Bloomberg*, 1996 SD 93, 551 N.W.2d 590, 592 (citing *State ex rel. Adkins v. Lien*, 9 S.D. 297, 299, 68 N.W. 748, 749 (1896)). The taxpayers themselves are not parties to the illegal contracts.

[¶ 48.] Because Brookings taxpayers are not in pari delicto, or equally at fault, with city officials and Mills, it mandates recovery of consideration already paid. The taxpayers, specifically Bozied, gave notice at city council meetings that they believed the actions of City and Mills were illegal. That recognition by the taxpayers does not make them a party to the illegal contract and therefore they should recover those payments made illegally. "The allegation that City and its residents were not harmed but rather profited because of the illegal contract is completely irrelevant." *Himrich v. Carpenter*, 1997 SD 116, 569 N.W.2d 568 (citing *Norbeck and Nicholson Co.*, 32 S.D. 189, 142 N.W. 847). Even the best of motives do not give vitality to a contract which is void from its inception.

[¶ 49.] While it is commonly said that the law abhors a forfeiture, I must point out that the relief from a forfeiture is still equitable in nature. And therefore, under the majority's holding that equitable defenses are not allowed with void contracts, the circuit court should be in a position to disallow any relief from forfeiture if the contract is determined to be void. *Helm Bros., Inc. v. Trauger*, 389 N.W.2d 600, 603 (N.D.1986).

[¶ 50.] Mills' July 2, 1998 letter to the Agri-plex board confirms Mills was aware of the legal requirements of bidding public contracts and the ramifications of the change orders. From the wording of this letter, it appears Mills attempted to influence the board to execute a change order instead of letting bids on the changes.[11] "When parties seek equity in the court, they must do equity, which includes entering the court with clean hands." *Himrich*, 1997 SD 116 at ¶ 21, 569 N.W.2d at 573

---

**11.** In its letter, Mills urged the Board to act quickly on a number of change orders to avoid time delays and added expense. It urged a change order approach, stating, "You may certainly delay action on these items to include them with your total package approach but that delay will cost extra. Because of the interruption in our work, we will need an answer (signed Change Order) on these items by July 10 to avoid having to add additional $ to cover our extended overhead expense estimated at $825.00 per day for our portion alone."

(quoting *Shedd v. Lamb*, 1996 SD 117, 553 N.W.2d 241, 245). Although the majority has now remanded the matter to the trial court, I would suggest that in view of the record currently before us, perhaps Mills also did not have the cleanest of hands when entering into the change orders. "Contractors who do business with public entities do so at their peril. They are charged with the duty to be familiar with the statutory requirements and to adhere to them." *Hoiten*, 1998 SD 44 at ¶ 23, 579 N.W.2d at 17 (quoting *Carr v. City of Sioux Falls*, 416 N.W.2d 602, 604 (S.D. 1987)). Even though Mills and the City both perhaps did gain time and money from executing the change orders in that fashion, that is no excuse for violating the procedures set in place by statute, requiring compliance with the public bidding laws of this state. The forfeiture of all the money paid under the illegal change orders may seem harsh in this instance; but I believe the remedy to the taxpayers is appropriate if the public bidding laws of the State of South Dakota are to have any real meaning in the future. As one renowned treatise has explained:

> The provisions of statutes, charters and ordinances requiring competitive bidding in the letting of municipal contracts are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable, and they are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest. These provisions are strictly construed by the courts, and will not be extended beyond their reasonable purpose. Competitive bidding provisions must be read in the light of the reason for their enactment[.]

10 McQuillan, Municipal Corporations (3rd rev. ed. 1999) § 29.29 at 364 (footnotes omitted).

[¶ 51.] With these notes of disagreement from the majority's opinion, I respectfully give my dissent on those two issues.

[¶ 52.] VON WALD, Circuit Judge, for SABERS, Justice, disqualified.